# JULIAN *v.* CENTRAL TRUST COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 139. Argued January 21, 22, 1904.—Decided February 23, 1904.

While the decision of the highest court of a State is entitled to the highest respect and consideration from, it is not conclusive upon, this court in determining rights secured by a purchaser under a decree of foreclosure in a Federal court at a sale made prior to the rendition of such decision.

Under the laws of North Carolina, and the decisions of the highest court of that State rendered prior to 1894, there was nothing to prevent property of a railroad company sold under foreclosure passing to the purchaser free from any obligation for debts of the former owner arising thereafter, notwithstanding the purchaser was not a domestic railroad corporation.

Where the Federal court acts in aid of its own jurisdiction and to render its decree effectual, it may, notwithstanding § 720, Rev. Stat., restrain all proceedings in a state court which have the effect of defeating or impairing its jurisdiction.

A purchaser of property sold under a decree of foreclosure in a Federal court, in cases where the Federal court by its decree retains jurisdiction to settle all liens and claims upon the property and who is in possession of the property under an order confirming the sale, can maintain an action in the same court to restrain the holders of judgments obtained in the state courts against the former owner, in actions to which the purchaser was not a party, from levying upon and selling the property described in the decree of foreclosure and the order confirming the sale thereunder.

On May 2, 1894, a decree was entered in the Circuit Court of the United States for the Western District of North Carolina foreclosing a second mortgage of the Western North Carolina Railroad Company to the Central Trust Company of New York, trustee. The property was subject to a first mortgage to the same trustee, which was not in default. The decree provided:

" The purchaser or purchasers of the property herein decreed to be sold," the Western North Carolina Railroad and its franchises, "shall be invested with and shall hold, possess and enjoy the said mortgaged premises and property herein decreed to be sold, and all the rights, privileges and franchises, appertaining thereto, as fully and completely as the Western North Carolina Railroad now holds and enjoys, or has heretofore held and enjoyed the same;" and further, the said purchaser or purchasers "shall have and be entitled to hold the said railroad and property discharged of and from the lien of the mortgage foreclosed, in this suit, and from the claims of the parties to this suit or any of them, except the first consolidated mortgage of September 1, 1884."

In pursuance of this decree the Southern Railway Company, a corporation of the State of Virginia, became the purchaser. On August 22, 1894, the sale was confirmed, the decree of confirmation providing, among other things:

" It is further ordered and decreed that the special master is hereby authorized and directed, on the request of s'id purchaser, to sign, seal, execute, acknowledge and deliver a proper deed of conveyance to the said Southern Railway Company, conveying to it, all and singular, the railroad, equipment, property and franchises so as aforesaid, sold under the decree

of this court, free from any and all equity of redemption of the said Western North Carolina Railroad Company, or any one claiming by, under or through it, except the prior mortgage recited in such decree.   Upon the delivery of such conveyance by the special master the said Southern Railway Company shall fully possess and be invested with all of the estate, right, title and interest in, to and of such railroad, equipment, property and franchises so sold under the decree of this court as the absolute owner thereof, to have and to hold the same to it and its successors and assigns forever.

"On August 31, 1894, on exhibition of the deed executed and delivered by the special master herein ordered, the defendant company is authorized, directed and required forthwith to deliver over to the said Southern Railway Company the possession of all and singular the railroad and property described in and conveyed by such deed.

"It is also further ordered that by way of further assurance and confirmation of title to such Southern Railway Company of the property so by it purchased under the decree of this court, the said The Western North Carolina Railroad Company, by its proper officers and under its corporate seal, and the Central Trust Company of New York, trustee, shall, upon request of said Southern Railway Company, sign, seal, execute, acknowledge and deliver to said Southern Railway Company all proper deeds of conveyance, transfer, release and further assurance of all the railroad property and franchises so as aforesaid sold under the decree of this court and embraced in the deed of the special master, so as fully and completely to transfer to and invest in the said Southern Railway Company the full, legal and equitable title to all such railroad, property and franchises sold or intended to be sold under the decree of this court."

Afterwards the master conveyed to the Southern Railway Company—

"All and singular the railroad of the said Western North Carolina Railroad Company in the State of North Carolina, extending from Salisbury, in Rowan County, to and through Statesville, in Iredell County, to Asheville, on or near the

French Broad River, in Buncombe County ; thence along French Broad River to Paint Rock in Madison County, and also from said Asheville westward to the Tennessee River at or near the mouth of the Nantahala River, and thence westward to Murphy in Cherokee County ; and all real estate now owned or acquired for the purpose of said railroad, including all station, depot or other grounds held and used in connection therewith ; and all rails, railway tracks, sidings, switches, bridges, fences, turn-tables, water tanks, viaducts, culverts, superstructures, passenger and other depots, station and freight houses, machine shops, buildings, fixtures, rolling stock, equipment, machinery, tools and implements whatsoever, now owned or acquired for the purposes or business of the said Western North Carolina Railroad Company in connection with the said railroad, and all the franchises, rights, privileges, easements, income, earnings and profits of the said Western North Carolina Railroad Company, connected with, issuing from or relating to the said above-described railroad.

" The foregoing properties, real, personal, choses in action and franchises, being embraced in the lien of the second mortgage of the Western North Carolina Railroad Company, executed September 2, 1884, and being sold in foreclosure of the same.

" A more full and particular description of the property intended to be conveyed by this instrument being contained in said decree of the 5th of May, 1894, to which reference is hereby made, together with all the corporate estate, equity of redemption, rights, privileges, immunities and franchises of said Western North Carolina Railroad Company, and all the tolls, fares, freights, rents, income, issues and profits of the said railroad, and all interests and claims and demands of every nature and description, and all the reversion and reversions, remainder and remainders thereof, including all the said mortgaged premises and property in said decree directed to be sold, at any time owned or acquired by, and now in the possession of, said Western North Carolina Railroad Company.".

The deed of purchase was duly recorded, and in August, 1894, the purchaser took possession of the railroad property

and has ever since been in possession of the road operating it as owner.

On March 20, 1897, Mrs. James, as administratrix of her deceased husband, W. A. James, brought an action in the Superior Court of Rowan County, North Carolina, against the Western North Carolina Railroad Company for damages for the wrongful killing of her husband. The Southern Railway Company was the employer of the deceased and he was killed in its service while acting as a locomotive engineer. In the trial court a judgment was rendered in favor of the railroad company. On appeal the judgment was reversed and the cause remanded to the Superior Court, with directions to enter a judgment for the damages assessed in favor of the administratrix. *James* v. *Railroad*, 121 N. Car. 523. Judgment was entered accordingly against the Western North Carolina Railroad Company for $15,000 on February 21, 1898.

On the same day that the James suit was begun, March 20, 1897, Fannie E. Howard, administratrix of her husband, John H. A. Howard, deceased, commenced an action in the Superior Court to recover of the Western North Carolina Railroad Company damages sustained in the death, by wrongful act, of her husband, who was killed at the same time with James, being a fireman in the employ of the Southern Railway Company, and recovered damages in the sum of five thousand dollars on February 21, 1898. To neither of these suits was the Southern Railway Company made a party defendant. After the recovery of these judgments, Mrs. James and Mrs. Howard caused executions to be issued from the Superior Court of Rowan County and placed the same in the hands of D. R. Julian, sheriff, who proceeded to levy the same upon the property as belonging to the Western North Carolina Railroad Company, to wit:

"The Western North Carolina Railroad Company, existing in the State of North Carolina, including its corporate franchises, rights, privileges, immunities, easements and appurtenances of every kind appertaining, belonging to, or in any wise connected therewith, or issuing out of and relating to the said The Western North Carolina Railroad Company, together

with all of its property in the State of North Carolina, and in-
cluding its roadbed and right of way, its real estate acquired
and owned for railroad purposes, its stations, depots, grounds,
its railway tracks, switches, sidings, bridges, fences, turn-tables,
water tanks, viaducts, culverts, superstructures, passenger,
freight and other houses, machine shops, buildings and fixtures
—the said railroad extending from the town of Salisbury
through Statesville, Newtown, Hickory, Morganton, Marian,
Asheville to Paint Rock in Madison County, and from Ashe-
ville westward by way of Waynesville to Murphy in Cherokee
County—reference being had for a further description of said
road and its property, rights and franchises to the charter of
the said road and the amendments thereto enacted from time
to time by the general assembly of North Carolina."

The sheriff advertised the property levied upon for sale,
whereupon the Central Trust Company of New York and the
Southern Railway Company filed a supplemental bill in the
foreclosure proceeding, making the sheriff party defendant,
seeking to quiet the title to the property and franchise pur-
chased at the foreclosure sale and to enjoin the sale of the same
to satisfy the judgments rendered in the state courts against
the Western North Carolina Railroad Company. In the an-
swer of the sheriff and of the administratrices of James and
Howard issue was taken upon the right of the Circuit Court
to entertain the bill or grant an injunction, and among other
things it was averred:

"3. That these respondents deny the truth of the allegations
contained in the third section of the supplemental bill of com-
plaint, and while they admit that the Southern Railway Com-
pany took a deed from the master purporting to convey the
said franchises and property subject to the lien of the first
mortgage bonds theretofore issued by the said company, they
aver that the Southern Railway Company, being at the time
of said sale not a resident corporation of the State of North
Carolina, and not subject to visitation of said State, but at-
tempting to do business therein by comity, was not allowed or
authorized by the laws of North Carolina to purchase, or hold,
or operate the Western North Carolina Railroad, or to own its

franchise and property without becoming a domestic corpora-
tion, and that, by virtue of certain laws enacted by the legis-
lature of North Carolina at its session of 1879, being chapter
10 of the Laws of 1879, reënacted in the Code of North
Carolina as section 1255, no mortgage of the Western North
Carolina Railroad Company, thereafter issued, had the legal
effect of exempting the property or earnings of said company
from execution for the satisfaction of any judgment obtained
in the courts of said State against said company for torts there-
after committed by said company, its agents or employees,
whereby any person should be killed, or any person or property
injured, ' any clause or clauses in such mortgage to the con-
trary notwithstanding,' both the first mortgage bonds subject
to which the sale of the franchise and property of said com-
pany purporting, under the decree referred to in the bill of
complaint, to have been sold, and the second mortgage bonds,
for default in payment of the interest on which the decree of
foreclosure was entered, appear from said record (Exhibit A
to said bill of complaint) to have been issued long after the
enactment of said statute in the year 1871, and said statute,
since its enactment in 1871, has been the law of the State of
North Carolina, in contemplation of which all railroad com-
panies created by and organized under the laws of said State
have issued all mortgage bonds, the said statute, as these re-
spondents are advised, informed and believe, having entered
into and formed a part of every mortgage bond issued by any
railroad corporation operating under the laws of North Caro-
lina since its enactment in 1871.

"But these respondents deny the truth of the allegation
' that, at the time of their death (referring to the death of W.
A. James and John H. A. Howard) the Western North Car-
olina Railroad Company had no interest in the Western North
Carolina Railroad, or the franchises, nor had it any interest or
estate in said railroad or franchise of any kind or nature what-
soever since the 22d day of August, 1894, the day the South-
ern Railway Company took possession of said railroad;' and
these respondents aver that the Supreme Court of North Car-
olina, the highest appellate court of said State, held and ad-

judged, in the year A. D. 1898, in actions pending therein on appeal, and in which these respondents, respectively, were plaintiffs, and the said The Western North Carolina Railroad Company was defendant, that the said Western North Carolina Railroad Company was still an existing corporation, liable to be sued in the courts of said State, and that the said judgments in favor of these respondents, respectively, and against the Western North Carolina Railroad Company, constituted liens upon the franchise and property of the company, superior to the liens of the said first mortgage bonds or the said second mortgage bonds mentioned in the said foreclosure suit, and these respondents are advised, informed and believe that the courts of the United States are bound to follow and adopt the construction given by the highest appellate court of North Carolina in construing its own constitution and its own laws. And these respondents are advised, informed and believe that, though the Southern Railway Company had assumed the right to operate the Western North Carolina Railroad, and had employed the intestates of these respondents as engineer and fireman, when they were killed by the negligence of said Southern Railway Company, that the Supreme Court of North Carolina had held and adjudged in the said actions brought by these respondents against the Western North Carolina Railroad Company, and wherein they recovered the judgments in pursuance of which executions have issued, as alleged in the bill of complaint, that the said The Western North Carolina Railroad Company was answerable for the torts of the Southern Railway Company, and for any damages to its employés caused by the negligence of said Southern Railway Company in operating said railroad."

Upon hearing upon the bill, answer and testimony a decree was entered in favor of the Central Trust Company and the Southern Railway Company and an injunction granted against the proposed sale of the property levied upon. From this decree an appeal was taken to the Circuit Court of Appeals, from whose judgment affirming the decree of the Circuit Court, 115 Fed. Rep. 956, a writ of certiorari to this court was granted.

*Mr. A. C. Avery* and *Mr. Lee S. Overman*, with whom *Mr. C. A. Mountjoy* was on the brief, for plaintiffs in error.

*Mr. Charles Price* and *Mr. F. H. Busbee*, with whom *Mr. William A. Henderson* was on the brief, for defendants in error.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

The title of the Southern Railway Company to the franchise and property of the Western North Carolina Railroad Company would seem to be plain, unless there is something in the North Carolina statutes or judicial determinations which prevents the foreclosure proceedings from having effect to pass the title. A railroad company in North Carolina has full authority to mortgage its franchises and property. Code of North Carolina, sec. 1957. This power was also given by the charter of the Western North Carolina Railroad Company. By the foreclosure proceedings, the title of the Western North Carolina Railroad Company to its franchise and property, except its mere right to be a corporation, was sold and the title confirmed in the purchaser. By the law of North Carolina the title to mortgaged premises is in the mortgagee. The Central Trust Company, the trustee under the first and second mortgages, was a party to the foreclosure proceedings. It is estopped to dispute the effect of the decree, sale and confirmation, clothing the Southern Railway Company with the full title to the property and franchise to operate a railroad which had theretofore belonged to the Western North Carolina Railroad Company. From this record and a consideration of the litigation that has arisen in the attempt to collect the James and Howard judgments, it is evident that a conflict exists between the views of the Federal courts and the Supreme Court of North Carolina, as to the effect of the foreclosure proceedings to relieve the property purchased at the sale from levy and execution to satisfy the James and Howard judgments. Such differences, always to be deprecated, should be approached

in a spirit of fairness and comity with a view to preventing conflicts of jurisdiction detrimental to the rights of parties and to the respect and authority due judicial tribunals.   The decision relied upon as justifying the sheriff in the levy of execution and, sale of the property formerly belonging to the Western North-Carolina Railroad Company is *James* v. *Railroad Co.*, reported in 121 N. Car. 523, in which case it was held that the sale of the railroad company's property upon the foreclosure of the second mortgage did not extinguish the corporate existence of the company nor release it from liability to the public for the manner in which the property was operated. Further, that the sale under the decree in the Circuit Court of the United States foreclosing the second-mortgage did not under secs. 697, 698 of the Code of North Carolina make the purchaser a domestic corporation, and that, in order to have the effect to dissolve the mortgagor corporation as provided in sec. 697 of the code, another corporation must be provided as contemplated in sec. 1936 of the code, to take its place and to assume and discharge the obligations to the public growing out of the franchise, and until that is done the old corporation will continue to exist.   Speaking of secs. 697 and 698 of the North Carolina Code the learned judge, delivering the opinion, said :

"These sections were passed in 1872, and we think should be considered in connection with section 701, which was passed in 1879, and sections 1936 and 2005 referred to in section 701.

"If this be the correct reading of these sections of the code, it would seem that while section 697 does say that these facts, *ipso facto,* dissolved the corporation, another corporation must be provided, as in section 1936 of the code, to take its place before it is dissolved; that there must always be a corporation in existence liable to the public for the duties and obligations assumed by the grantee for the privileges conferred in the grant of the franchise and that the old corporation must continue to exist until this is done; and that when the new corporation is formed it will be a domestic corporation.   It cannot be that the legislature ever intended, by this general legislation, to create a foreign corporation here, when it could

not do so by positive and direct enactment, 119 N. C. 918, Judge Dick's opinion in *Bradley v. Railroad,* published in the appendix. By this view of the case all the interests of the parties may be harmonized. The 'Southern,' the purchaser of the equity of redemption of the 'Western,' stands in the shoes of that company. The 'Southern' is in effect the mortgagor in its relations to the 'Central Trust Company of New York,' the mortgagee of the first mortgage, and being in possession of the road, its property and franchise, has the right to run and operate the same. But the old corporation, still in existence, is liable for damages caused by the maladministration of the 'Southern,' which it allows to run and operate the road. But the property of this road, which the 'Southern' is allowed to use, will be held liable to the public for damages. *Charlotte v. Railroad Co.,* 4 L. R. A. 135; *Brunswick Gas Co. v. United States Gas Co.,* 35 Am. St. Rep. 385, and note on page 390.

" It therefore follows that, in our opinion, the court below erred in its ruling upon the third issue. This ruling is reversed, and judgment should be entered for the plaintiff according to the verdict of the jury." *James v. Railroad Company,* 121 N. Car. 523, 528, 529.

This decision of the highest court of the State was made after the rights of the Southern Railway Company, whatever they may be, had accrued in the property and franchise of the Western North Carolina Railroad Company, and, while entitled to the highest respect and consideration, is not conclusive upon this court in determining the rights secured to the purchaser under the decree of foreclosure in the Federal court. *Burgess v. Seligman,* 107 U. S. 20.

If the North Carolina Supreme Court can be taken to have held that the property purchased by the Southern Railway Company at the judicial sale continued liable for debts thereafter accruing against the Western North Carolina Railroad Company, we are constrained to dissent from such conclusion. Under sec. 697, North Carolina Code, it is provided that the sale under a deed of trust or mortgage shall pass not only the works and property of a corporation and those ac-

quired after the mortgage and before the sale, but all other property of which it may be possessed at the time of the sale other than debts due it, and "upon such conveyance to the purchaser the said corporation shall, *ipso facto*, be dissolved, and the said purchaser shall forthwith be a new corporation by any name which may be set forth in the said conveyance, or in any writing signed by him, recorded in the same manner in which the conveyance shall be recorded." Section 698 provides that the corporation created by or in consequence of such sale and conveyance shall succeed to all such franchises, rights and privileges, and perform all such duties as would have been or should have been performed by the first corporation, but for such sale and conveyance, save only that the corporation so created shall not be entitled to the debts due to the first corporation, and shall not be liable for any debts or claims against the first corporation which may not be expressly assumed in the contract of purchase; nor shall the property, franchise or profits of such new corporation be exempt from taxation. This, with other provisions of sec. 668, indicate an intention to clothe the purchaser with all the property of the old corporation, including the franchise to conduct and operate a railroad, freed from all debts or obligations of the old corporation.

But these sections, it is said in the *James* case, must be read in connection with sec. 701 and secs. 1936 and 2005, referred to in sec. 701. They are set forth in the margin.[1]

---

[1] Sec. 701. This chapter, unless otherwise declared herein, or in the chapter entitled railroads and telegraphs, shall apply to all corporations, whether created by special act of assembly, by letters of agreement under this chapter, or by the chapter entitled railroads and telegraphs. And this chapter and the chapter on railroads and telegraphs, so far as the same are applicable to railroad corporations, shall govern and control, anything in the special act of assembly to the contrary notwithstanding, unless in the act of the general assembly creating the corporation the section or sections of this chapter, and of the chapter entitled "Railroad and Telegraph Companies," intended to be repealed, shall be specially referred to by number, and as such specially repealed.

Sec. 1936. There shall be a board of six directors and a president of every corporation formed under this chapter to manage its affairs; and said directors and president shall be chosen annually by a majority of the

And it is said, as the result of these provisions that, unless the purchaser shall organize a new domestic corporation to take the place of the old corporation the property continues liable, though in the hands of the purchaser, upon a cause of action asserted against the old corporation for the conduct of the new owner, and this in actions to which the purchaser is not a party, and whose knowledge of the suit and judgment may come with the seizure of the property to satisfy the judgment. For, it is said, " there must always be a corporation in existence liable to the public for the duties and liabilities assumed by the grantee for the privileges conferred in the grant of the franchise." This reasoning, it seems to us, assumes that the franchise to operate the road did not pass by the sale,

---

votes of the stockholders voting at such election, in such manner as may be prescribed in the by-laws of the corporation, and they may and shall continue in office until others are elected in their places. In the election of directors and president each stockholder shall be entitled to one vote personally or by proxy on every share held by him thirty days previous to any such election, and vacancies in the board of directors shall be filled in such manner as shall be prescribed by the by-laws of the corporation. The inspectors of the first election of directors shall be appointed by the board of directors named in the articles of association. No person shall be a director or president unless he shall be a stockholder owning stock absolutely in his own right and qualified to vote for directors at the election at which he shall be chosen; and at every election of directors the books and papers of such company shall be exhibited to the meeting if a majority of the stockholders present shall require it. And whenever the purchaser or purchasers of real estate, track and fixtures of any railroad corporation which has heretofore been sold or may be hereafter sold by virtue of any mortgage executed by such corporation or execution issued upon any judgment or decree of any court shall acquire title to the same in the manner prescribed by law. Such purchaser or purchasers may associate with him or them any number of persons, and make and acknowledge and file articles of association as prescribed in this chapter; such purchaser or purchasers and their associates shall thereupon be a new corporation with all the powers, privileges and franchises, and be subject to all the provisions of this chapter.

SEC. 2005. When any railroad corporation shall be dissolved, or its property sold and conveyed under any execution, deed of trust, mortgage or other conveyance, the owner or purchaser shall constitute a new corporation, and the property, franchise and profits of said new corporation shall be taxed as other like property, franchise and profits are rated.

unless such new domestic corporation is organized. As we have seen, the North Carolina statutes authorize the conveyance by mortgage of the property and the franchise to use and operate it. The decree of foreclosure undertakes to sell, and the confirmation to secure, the purchaser in the use and enjoyment of the property. The power given to mortgage the franchise of the corporation must necessarily include the power to bring it to sale with the property to make the sale effectual as a means of transferring the right to use the thing conveyed. *New Orleans &c. Railroad Co.* v. *Delamore*, 114 U. S. 501.

It is true the right to be a corporation is not sold. By the statute the corporation is declared to be dissolved by the sale, and under other sections of the North Carolina code its affairs are to be wound up. But the franchise to operate and use the property has passed at the sale, and must have done so to make the purchase of any value. This principle, recognizing the distinction between the mere right or franchise to be a corporation and the franchise of maintaining and operating the railroad, was distinctly pointed out by Mr. Justice Matthews in *Memphis R. R. Co.* v. *Commissioners*, 112 U. S. 609 :

" The franchise of being a corporation need not be implied as necessary to secure to the mortgage bondholders, or the purchasers at a foreclosure sale, the substantial rights intended to be secured. They acquire the ownership of the railroad, and the property incident to it, and the franchise of maintaining and operating it as such ; and the corporate existence is not essential to its use and enjoyment. All the franchises necessary or important to the beneficial use of the railroad could as well be exercised by natural persons. The essential properties of corporate existence are quite distinct from the franchises of the corporation. The franchise of being a corporation belongs to the corporators, while the powers and privileges, vested in and to be exercised by the corporate body as such, are the franchises of the corporation. The latter has no power to dispose of the franchise of its members, which may survive in the mere fact of corporate existence, after the corporation has parted with all its property and all its franchises."

It is true the sections of the North Carolina code herewith given clothe the purchaser with the right and privilege of organizing a corporation to operate the purchased property, but we find no requirement that he shall do so. The language of the last paragraph of sec. 1936 is "such purchaser or purchasers may associate with him or them any number of persons, and make and acknowledge and file articles of association as prescribed in this chapter; such purchaser or purchasers and their associates shall thereupon be a new corporation, with all the powers, privileges and franchises, and be subject to all the provisions of this chapter." This confers a privilege, but does not prevent the purchaser from transferring the property to a company already formed and authorized to purchase and operate a railroad. *People* v. *Brooklyn &c. Ry. Co.*, 89 N. Y. 75.

The Southern Railway Company was authorized by its charter, among other things, to purchase or otherwise acquire the property of any railroad company organized under the laws of another State. We have been cited to no statute of the State of North Carolina forbidding the purchase of a railroad at foreclosure sale by a corporation of another State. It is said that the State requires a domestic corporation organized under and subject to its laws to become the purchaser of a railroad under the North Carolina statutes already cited. But the Southern Railway Company in purchasing a franchise granted by the State of North Carolina and undertaking to operate a railroad within the State, is subject to regulation by the law of the State. *Runyan* v. *Lessee of Coster*, 14 Peters, 122; *Christian Union* v. *Yount*, 101 U. S. 352, 354. This principle is not qualified because the right of removal of suits for diverse citizenship still exists, as was held in *Southern Railway Co.* v. *Allison*, 190 U. S. 326. It is urged that the Supreme Court of North Carolina, by a course of decisions antedating the mortgage and foreclosure, had established the rule of law contended for as to the continuing liability of a railway corporation, unless a domestic corporation is organized to own and operate the property. We have examined these cases and do not find such to be the case. The Supreme Court of North Carolina had held a lessor liable for the conduct and manage-

ment of the lessee, and in *Pierce* v. *North Carolina Railroad Co.*, 124 N. Car. 83, decided in March, 1899, that court said:

"The motion to dismiss the complaint and for judgment of nonsuit appears from brief of defendants' counsel to be intended to raise again the question whether the lessor company, The North Carolina Railroad Company, the defendant herein, is liable 'for all acts done by the lessee in the operation of the road,' as was held in *Logan* v. *Railroad*, 116 N. C. 940, but why the counsel should feel 'encouraged to believe' that 'this court will retire from the position it has taken upon the question,' we are not advised. We have perceived no lack of 'soundness of reasoning' therein. The decision in Logan's case was made after full deliberation and with full appreciation and careful discussion of the important principle now again called in question—and it was held that 'a railroad company cannot escape its responsibilty for negligence by leasing its road to another company, unless its charter or a subsequent act of the legislature specially exempts it from liability in such case'— and it was made in an action to which the appellant herein was the party raising the question. The same proposition has been heretofore laid down by Smith, C. J., in *Aycock* v. *Railroad*, 89 N. Car., at page 330, with cases there cited; and Logan's case upon this point has been expressly cited and sustained in *Tillett* v. *Railroad*, 118 N. Car., at page 1043; *James* v. *Railroad*, 121 N. Car., page 528; *Benton* v. *Railroad*, 122 N. Car. 1007, (decided May 24, last,) and *Norton* v. *Railroad*, same volume, at pages 936, 937."

In the last two cases this point was again held against the same corporation, which is the appellant in this case; the verdicts were for considerable sums, and in Norton's case the defendant was represented by the same counsel as in the present case.

But this is far from holding that in the case of a sale the corporate property shall remain liable for the debts of the old corporation in suits against it until a new domestic corporation is organized to take the place of the old one. The cases cited hold the lessor to a continued liability, notwithstanding a lease. In the case in hand the property and franchise have been sold,

and there is no contractual relation between the companies nor permissive operation of the road by the new company.

Nor can we see any room for the application of section 1255 of the North Carolina Code, making liens for judgments for torts superior to mortgages of incorporated companies. In this case the tort was committed after the judgment debtor had parted with all its property and there was nothing for such judgment to operate upon. *Jeffrey* v. *Moran,* 101 U. S. 285.

Objection is made to the right of the corporation to maintain this bill. To determine this question reference must be had to the attitude of the parties and the nature of the remedy sought. By the decree of the Circuit Court all the property of the Western North Carolina Railroad Company was ordered to be sold, and was conveyed and confirmed to the purchaser, the Southern Railway Company; it was placed in possession of the property and has operated it ever since. The judgments in controversy were obtained for acts committed more than two years after the confirmation of the sale and were rendered about four years after the court adjudicated a sale of all the property of the Western North Carolina Railroad company. To these actions the Southern Railway Company was not a party, yet it is sought to levy upon and sell the very property conveyed to it by the decree of the Federal court, and this upon the theory set up in the answer herein that the property is still liable for the debts of the Western North Carolina Railroad Company because of the failure to organize a domestic corporation to take its place after the sale. The return of the sheriff shows that he has levied upon all this property, said to be of the value of five millions of dollars, to pay these judgments of twenty thousand dollars.

It is not claimed that the Western North Carolina Railroad Company acquired the property by any new title, but in effect it is sought to annul the order and decree of the Federal court because it has not operated to transfer the title to the purchaser. Examining the decree under which this property was sold, we find certain provisions which are important in this connection. It is provided:

"The purchaser or purchasers at said sale shall, as part of the consideration, for such sale, take the property purchased upon the express condition that he or they, or his or their assigns approved by the court, will pay off and satisfy any and all claims filed in this cause, but only when the court shall allow such claims and adjudge the same to be prior in lien to the mortgage foreclosed in this suit, and in accordance with the order or orders of the court allowing such claims and adjudging with respect thereto, and the purchaser or purchasers, or their approved assigns, shall be entitled to appeal from any and all orders or decrees of the court in respect to such claims or any of them, and shall have all the right in respect to such appeals which the complainant Central Trust Company of New York would have in case such appeals had been taken by it. The purchaser or purchasers at said sale shall also, as part of the consideration, in addition to the payment of the sum or sums bid, take the property purchased upon the express condition that he or they, or his or their assigns approved by the court, will pay off and satisfy all debts or obligations incurred or to be incurred by the receivers having possession of such property which have not been or shall not be paid by said receivers and which shall be adjudged by the court to be debts or obligations properly chargeable against the property purchased, and to be prior or superior to the lien of the mortgage foreclosed in this suit.

"The court reserves the right to retake and resell said property in case of the failure or neglect of purchaser or purchasers, or his or their assigns approved by the court as aforesaid, to comply with any order of the court in respect to payment of prior lien claims above mentioned within twenty days after service of a copy of such order upon said purchaser or purchasers, or his or their assigns."

And in the decree affirming the sale we find:

" "Thereupon the court orders and decrees that the said report of the special master be spread at large upon the record and be in all things approved, and the sale made by him to the said Southern Railway Company, being all and singular the railroad, equipment, property and franchises of the Western

North Carolina Railroad Company as described in and by the decree of foreclosure entered in this cause on May 5, 1894, at and for the sum of five hundred thousand dollars ($500,000) by it bid, be and the same is in all things ratified, approved, confirmed and made absolute, subject, however, to all the mortgages, receivers' debts and preferential claims, and to all equities reserved, and to all and singular the conditions of purchase as recited in said decree, and the continued right of the court to adjudge and declare what receivers' or corporate debts are prior in lien or in equity to the lien of the mortgage herein foreclosed or ought to be paid out of such proceeds of sale in preference to the bonds secured thereby. And this court expressly reserves for future adjudication, and power thereby to bind the property sold, all liens and claims and equities specified in and reserved by the said final decree of foreclosure so as aforesaid entered on May 5, 1894.

" And the court accepts the said Southern Railway Company as the purchaser of all and singular the railroad, property and franchises sold under the decree in this cause and holds it obligated as such purchaser to complete and fully pay its said bid and to comply with all the orders of the court heretofore entered, or hereafter from time to time to be entered by it obligatory on such purchaser. And the court reserves full power, notwithstanding such conveyance and delivery of possession, to retake and resell the property this day confirmed to purchaser, if it fails or neglects fully to complete such purchase and comply with the orders of court in respect to the full payment and performance of its bid, or to pay into court in accordance with such decree of sale all such sums of money hereafter ordered by the court to be paid into its registry to discharge any and all such debts, liens or claims as it may decree ought to be paid out of the proceeds of sale in preference to the mortgage of the Western North Carolina Railroad Company herein foreclosed."

It is obvious that by this decree of sale and confirmation it was the intention and purpose of the Federal court to retain jurisdiction over the cause so far as was necessary to determine all liens and demands to be paid by the purchaser. It ac-

cepted the purchaser and thereby made it a party to the suit. *Blossom* v. *Railroad Co.*, 1 Wall. 655. The court reserved the right to retake the property if necessary to enforce any lien that might be adjudged against the same. On the other hand, the purchaser agreed to pay only such demands as the Circuit Court might declare and adjudge to be legally due, with the right of appeal from such judgment. These provisions make apparent the purpose of the court to retain jurisdiction for the purpose of itself settling and determining all liens and demands which the purchaser should pay as a condition of security in the title which the court had decreed to be conveyed. If the sheriff is allowed to sell the very property conveyed by the Federal decree, such action has the effect to annul and set it aside, because in the view of the state court it was ineffectual to pass the title to the purchaser. In such case we are of opinion that a supplemental bill may be filed in the original suit with a view to protecting the prior jurisdiction of the Federal court and to render effectual its decree. *Central Trust Co. of New York* v. *St. Louis, Arkansas &c., Railroad Co.*, 59 Fed. Rep. 385; *Fidelity Ins. Trust & Safe Deposit Co.* v. *Norfolk & W. R. R. Co.*, 88 Fed Rep. 815; *State Trust Co.* v. *Kansas City &c. R. R. Co.*, 110 Fed. Rep. 10.

In such cases where the Federal court acts in aid of its own jurisdiction and to render its decree effectual, it may, notwithstanding sec. 720, Rev. Stat., restrain all proceedings in a state court which would have the effect of defeating or impairing its jurisdiction. *Sharon* v. *Terry*, 36 Fed. Rep. 337, per Mr. Justice Field; *French* v. *Hay*, 22 Wall. 250; *Deitzsch* v. *Huidekoper*, 103 U. S. 494.

Nor is it an answer to say that these judgments were for causes of action arising subsequent to the confirmation of sale. The Federal court by its decree, reserved the right to determine what liens or claims should be charged upon the title conveyed by the court, and by the levy and sale to pay these judgments the title is charged with other liens established in another court in a proceeding to which the purchaser was not a party. The Federal court, in protecting the purchaser

under such circumstances, was acting in pursuance of the jurisdiction acquired when the foreclosure proceedings were begun.

In *Farmers' Loan & Trust Co.*, (original,) 129 U. S. 206, 213, Mr. Justice Miller said: "But the doctrine that, after a decree which disposes of a principal subject of litigation and settles the right of the parties in regard to that matter, there may subsequently arise important matters requiring the judicial action of the court in relation to the same property and some of the same rights litigated in the main suit, making necessary substantive and important orders and decrees in which the most material rights of the parties may be passed upon by the court, and which, when they partake of the nature of final decisions of those rights may be appealed from, is well established by the decisions of this court."

We think this case belongs to the class instanced by the learned justice, and that the Circuit Court by the order made retained jurisdiction of the case to settle all claims against the property and to determine what burdens should be borne by the purchaser as a condition of holding the title conveyed. In such cases the jurisdiction of the court may be invoked by supplemental bill or bill in the nature of a supplemental bill, irrespective of the citizenship of the parties. *Freeman* v. *Howe et al.*, 24 How. 450, 460. The authorities are collected in a note to sec. 97, vol. 1, of Bates on Federal Equity Procedure, and the doctrine thus summarized: "It would seem that the prevention of the conflict of authority between the state and Federal courts, and the protection and preservation of the jurisdiction of each, free from encroachments by the other, are considerations which lie at the very foundation of ancillary jurisdiction. A bill filed to continue a former litigation in the same court, or which relates to some matter already partly litigated in the same court, or which is an addition to a former litigation in the same court, by the same parties or their representatives standing in the same interest, or to obtain and secure the fruits, benefits and advantages of the proceedings and judgment in a former suit in the same court by the same or additional parties, standing in the same interest, or to prevent a party from using the proceedings and judgment

of the same court for fraudulent purposes, or to restrain a party from using a judgment to perpetrate an injustice, or obtain an inequitable advantage over other parties to the former judgment or proceeding, or to obtain any equitable relief in regard to, or connected with, or growing out of, any judgment or proceeding at law rendered in the same court, or to assert any claim, right or title to property in the custody of the court, or for the defence of any property rights, or the collection of assets of any estate being administered by the court, is an ancillary suit."

While recognizing the weight which should be given to decisions of the Supreme Court of a State in construing its own laws, and being disposed to follow them and accept the conclusions reached in construing local statutes. in every case of doubt, we are here dealing with a right and title conferred by authority of the decree of a Federal court, which may be virtually set aside and held for naught if the property awarded can be taken upon execution in suits to which the purchaser is not a party. It is conceded that the Federal right could be set up in the state court from which the execution issued, and, if denied, the ultimate rights of the parties can be determined upon writ of error to this court. In the view we have taken of this case the Federal court had not lost its jurisdiction to protect the purchaser at its sale upon direct proceedings such as are now before us.

We find no error in the judgment of the Circuit Court of Appeals, and the same is

                                                    *Affirmed.*