PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ROBB EVANS & ASSOCIATES, LLC,
as Receiver over the Assets of
Andris Pukke and DebtWorks,
Inc.,

*Plaintiff-Appellee,*

v.

JEFFREY HOLIBAUGH,

*Defendant-Appellant.*

No. 09-1429

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, Senior District Judge.
(8:07-cv-02367-PJM)

Argued: May 11, 2010

Decided: June 29, 2010

Before GREGORY and SHEDD, Circuit Judges, and
Arthur L. ALARCÓN, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

Affirmed by published opinion. Judge Shedd wrote the majority opinion, in which Senior Judge Alarcón joined. Judge Gregory wrote a dissenting opinion.

## COUNSEL

**ARGUED**: Mitchell Jay Rotbert, ROTBERT LAW GROUP, LLC, Rockville, Maryland, for Appellant. Gary Owen Caris, MCKENNA, LONG & ALDRIDGE, LLP, Los Angeles, California, for Appellee. **ON BRIEF:** Lesley Anne Hawes, MCKENNA, LONG & ALDRIDGE, LLP, Los Angeles, California, for Appellee.

## OPINION

SHEDD, Circuit Judge:

After Robb Evans & Associates, LLC ("REA") was appointed receiver over the assets of Andris Pukke, it brought this action against Jeffrey Holibaugh to recover receivership property — specifically, payment on a promissory note. The district court granted summary judgment in favor of REA and denied Holibaugh's post-judgment motion to set aside the judgment and dismiss. Holibaugh now appeals the summary judgment and post-judgment orders. For the following reasons, we affirm.

I.

The Federal Trade Commission ("FTC") filed a civil enforcement action charging Ameridebt, Inc., DebtWorks, Inc., and Pukke with violations of 15 U.S.C. § 45(a) in connection with a fraudulent debt counseling scheme. The FTC and Pukke entered into a stipulation for judgment by the district court settling the FTC claims. *Fed. Trade Comm'n v. Ameridebt, Inc., et al.*, No. PJM 03-3317 (D.Md. May 16, 2006). In its order effecting this judgment, the district court appointed REA as the equity receiver over Pukke's assets to "maintain custody, control, and possession of all Assets, including . . . all sums of money now or hereafter due or

owing to the Receivership, with full power to: collect, receive, and take possession of all Assets. . . ." J.A. 57.

The order authorized REA to "[b]ring such legal actions based on law or equity in any state, federal, or foreign court as it deems necessary or appropriate in discharging its duties as Receiver relating to the location, marshaling, and management of Assets constituting Receivership property." J.A. 58. Additionally, the order provided that the district court "shall retain jurisdiction of this matter for all purposes, including construction, modification, and enforcement of this Order." J.A. 69.

One of the receivership assets is Infinity, an entity owned by Pukke that made loans to Pukke's friends, family members, and business associates. Through a series of loans, Infinity loaned approximately $1,340,000 to Holibaugh and his business associate to capitalize a restaurant venture, and Holibaugh executed a note ("the Note") in favor of Infinity for $1,330,116.75, representing the outstanding balance of these loans. Holibaugh defaulted, and REA filed this action in the district court as receiver to collect on the Note.

REA moved for summary judgment, arguing that there is no genuine issue of material fact in dispute and that it is entitled to judgment as a matter of law on its claim for payment on the Note. Holibaugh then filed a cross-motion for summary judgment alleging that (1) the statute of limitations barred REA's claims and (2) based on various oral promises made by Pukke, Holibaugh was not personally liable on the Note. The district court granted REA's motion for summary judgment, denied Holibaugh's cross-motion for summary judgment, and awarded REA $1,435,686.04. In doing so, the court first found that the action was not barred by the statute of limitations. The court also applied the parol evidence rule and found that there is no genuine issue of material fact that Holibaugh executed the Note and is bound thereby.

Holibaugh then moved under Fed. R. Civ. P. 60(b)(4) and 12(h)(3) to set aside the judgment and dismiss for lack of subject matter jurisdiction. He argued that (1) there is no diversity of citizenship; (2) there is no federal question because REA filed this suit solely pursuant to Maryland state law; and (3) REA cannot establish a basis for supplemental jurisdiction under 28 U.S.C. § 1367 or common law ancillary jurisdiction. The court denied the motion. Holibaugh now appeals both the order granting summary judgment to REA and the order denying his post-judgment motion.

## II.

### A.

First, we consider Holibaugh's argument that the district court erred in denying his post-judgment motion alleging lack of subject matter jurisdiction. Specifically, he contends that the district court erroneously held that it has ancillary subject matter jurisdiction over this action based on REA's appointment as receiver in the FTC enforcement action. We review *de novo* the district court's decision finding that it had subject matter jurisdiction. *New Horizon of NY, LLC v. Jacobs*, 231 F.3d 143, 150 (4th Cir. 2000).

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). The burden of establishing subject matter jurisdiction is on REA, the party asserting jurisdiction. *Id.*

The Supreme Court has held that a district court has ancillary subject matter jurisdiction over an action brought by a receiver in furtherance of its appointment where the district court had federal question jurisdiction over the original action in which it appointed the receiver. *See Riehle v. Margolies*, 279 U.S. 218, 223 (1929) ("The appointment of a receiver of a debtor's property by a federal court confers upon it, regard-

less of citizenship and of the amount in controversy, federal jurisdiction to decide all questions incident to the preservation, collection, and distribution of the assets. It may do this either in the original suit . . . or by ancillary proceedings.") (citations omitted); *Pope v. Louisville, N.A. & C. Ry. Co.*, 173 U.S. 573, 577 (1899) (noting that a court of appointment has ancillary subject matter jurisdiction over a suit brought by a receiver for recovery of receivership property); *White v. Ewing*, 159 U.S. 36, 38-39 (1895) (holding that a court that appoints a receiver for an insolvent corporation retains jurisdiction over claims brought by the receiver against debtors of the corporation). *See also Alexander v. Hillman*, 75 F.2d 451, 453 (4th Cir. 1935) ("[I]t is well settled that the courts of the United States have jurisdiction to entertain, either in equity or at law as may be appropriate, ancillary proceedings in aid of a receivership suit pending in a federal court, even though other elements of federal jurisdiction . . . may be lacking."). More recently, the Sixth Circuit has explained this concept:

> [T]he initial suit which results in the appointment of the receiver is the primary action and . . . any suit which the receiver thereafter brings in the appointment court in order to execute his duties is ancillary to the main suit. As such, the district court has ancillary subject matter jurisdiction of every such suit irrespective of diversity, amount in controversy or any other factor which would normally determine jurisdiction.

*Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 822 (6th Cir. 1981) (holding that a district court that appointed a receiver over a church had jurisdiction over the receiver's actions against a Bank to collect receivership funds).

Here, the district court appointed REA as receiver to locate and collect the various assets of Pukke on behalf of the FTC. It specifically authorized REA to take necessary and appropriate legal action to collect receivership assets. Because REA

was appointed by the district court in an action over which the district court had federal subject matter jurisdiction, and REA's action against Holibaugh is in furtherance of its duty to marshal Pukke's assets, this action is within the district court's ancillary jurisdiction recognized by the Supreme Court for over a century.

Notwithstanding this precedent, Holibaugh contends that when Congress enacted 28 U.S.C. § 1367 in 1990, thereby codifying the concept of supplemental jurisdiction, it eliminated common law ancillary jurisdiction as applied to this case. He further argues that REA's action here does not qualify for supplemental jurisdiction under § 1367.

We disagree with Holibaugh's argument. "Congress codified much of the common-law doctrine of ancillary jurisdiction as part of 'supplemental jurisdiction' in 28 U.S.C. § 1367." *Peacock v. Thomas*, 516 U.S. 356, 867 n.5 (1996); *see also Shanaghan v. Cahill*, 58 F.3d 106, 109 n.1 (4th Cir. 1995) ("[S]upplemental jurisdiction also incorporates the doctrine of ancillary jurisdiction.").[1] However, it did not codify all of common law ancillary jurisdiction.

Although § 1367 governs ancillary jurisdiction over *claims* asserted in a case over which the district court has federal subject matter jurisdiction, it does not affect common law ancillary jurisdiction "over related *proceedings* that are technically separate from the initial case that invoked federal subject matter jurisdiction," which remains governed by case law.

---

[1]Section 1367 provides, in relevant part,

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other *claims* that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

(emphasis added).

13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3523.2 (3d ed. 2010) (emphasis in original).[2] *See also United States v. Texas*, 507 U.S. 529, 534 (1993) ("'[C]ourts may take it as a given that Congress has legislated with an expectation that [a] common law principle will apply except when a statutory purpose to the contrary is evident.'") (internal citations omitted). The Supreme Court has acknowledged the continued existence of common law ancillary jurisdiction with regard to separate proceedings after Congress enacted § 1367. *See Kokkonen*, 511 U.S. at 379-82 (discussing the availability of ancillary jurisdiction but declining to extend it based on the facts of that case); *Peacock*, 516 U.S. at 354-56 (same).[3]

---

[2]Although the dissent correctly observes that absent congressional authorization, a district court cannot exercise jurisdiction over additional *claims* involving new parties in an action, *see Finley v. United States*, 490 U.S. 545, 556 (1989), *superseded by statute*, Judicial Improvements Act of 1990, Pub.L. 101-650, 104 Stat. 5089 (codified at 28 USC § 1367); *Raygor v. Regents of Univ. of Minnesota*, 534 U.S. 533, 539-40 (2002), in this case, we are addressing the doctrine of ancillary jurisdiction over separate *proceedings*.

[3]Subsequent to the enactment of § 1367, at least one other circuit has specifically recognized the continued existence of common law ancillary jurisdiction over an action filed by a receiver in furtherance of the powers and duties of the receiver under its appointment. *See Donell v. Kowell*, 533 F.3d 762, 769 (9th Cir. 2008).

Although the dissent observes that the Supreme Court has refused to extend the doctrine of ancillary jurisdiction over separate proceedings to new contexts, *see Kokkonen*, 511 U.S. at 380-82 (declining to extend ancillary jurisdiction to an action to enforce terms of settlement agreement); *Peacock*, 516 U.S. at 356-59 (declining to extend ancillary jurisdiction to an action seeking to "pierce the corporate veil" in order to hold a corporate officer liable for an ERISA judgment), these cases in no way diminish the long-recognized doctrine of ancillary jurisdiction over actions brought by court-appointed equity receivers. *See Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

In short, based on controlling precedent, we hold that the district court properly exercised subject matter jurisdiction. Therefore, we affirm the denial of Holibaugh's post-judgment motion.

B.

We next turn to Holibaugh's argument that the district court erred in granting summary judgment. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We review the district court's order granting summary judgment *de novo*. *Jennings v. Univ. of North Carolina*, 482 F.3d 686, 694 (4th Cir. 2007) (en banc).

Holibaugh contends that the district court erred in holding that the Note is a negotiable instrument and applying a six-year statute of limitations under D.C. Code § 28:3-118(a) (applicable to negotiable instruments)[4] to conclude that the action is not time-barred. Holibaugh does not dispute that the action was timely filed if the six-year statute of limitations period applies, as the Note was executed on February 4, 2003, and this action was filed on September 6, 2007. Instead, he argues that the Note is not a negotiable instrument and therefore, the action is barred by a three-year statute of limitations under D.C. Code § 12-301(7) (applicable to simple contracts).

D.C. Code § 28:3-104(a) sets forth the requirements for negotiability:

> [T]he term "negotiable instrument" means an unconditional promise or order to pay a fixed amount of

---

[4]The Note contains a choice of law clause providing that it will be governed by the laws of the District of Columbia.

money, with or without interest or other charges described in the promise or order, if it:

(1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

(2) Is payable on demand or at a definite time; and

(3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money . . . .

Holibaugh argues that the Note fails the first requirement because it is not "payable to bearer or to order." The Note specifically provides that Holibaugh "promises unconditionally *to pay to the order of Lender*, (the 'Noteholder'), the Amount Financed [defined as $1,330,116.75] with Interest payable in consecutive equal monthly installments." J.A. 73 (emphasis added). Because the clear language of the Note makes it "payable to the order of an identified person," D.C. Code § 28:3-109(b), it is payable to order, and Holibaugh's challenge to the first requirement lacks merit.

Holibaugh also contends that the Note fails the third requirement because it includes an "undertaking or instruction" by the maker of a note "to do any act in addition to the payment of money." D.C. Code § 28:3-104(a)(3). He bases his argument on the term of the Note providing that he will be considered in default if he assumes any additional "lines of credit without the prior written consent of the Lender." J.A. 73. However, a term that does no more than define an act of default does not encumber the Note so as to destroy its negotiability, as opposed to a term that imposes an affirmative obligation in addition to the core promise to pay. *See* D.C. Code § 28:3-104(a)(3) (prohibiting an additional obligation "to do any act" other than make payment on the Note); *In re AppOnline.com, Inc.*, 290 B.R. 1, 12 (Bankr. E.D.N.Y. 2003)

(holding that a note is negotiable despite a provision accelerating payment if the borrower sold the property or if a beneficial interest in the corporate borrower was transferred). Therefore, Holibaugh did not obligate himself to any additional "undertaking or instruction" in contravention of § 28:3-104(a)(3).[5] Because the Note constitutes a negotiable instrument, the applicable statute of limitations period is six years, and it is undisputed that REA's lawsuit was filed within that time period.

## C.

Finally, Holibaugh argues that the district court erred in granting summary judgment to REA because there is a genuine issue of material fact as to whether the parties intended that he be held personally responsible on the Note. Holibaugh contends that before he signed the Note, Pukke orally agreed that if the restaurant could not repay the loan, Pukke would not collect the debt from Holibaugh personally. He testified that it was "understood" that the restaurant was solely responsible for payment and that Pukke represented this to him before he executed the Note. However, Holibaugh acknowledged that he signed the Note as a borrower, not on behalf of the company or as a guarantor.

The district court excluded this testimony pursuant to the parol evidence rule. The parol evidence rule provides that extrinsic evidence "'is inadmissible to vary or contradict the terms of a valid, and plain and unambiguous, written contract.'" *Affordable Elegance Travel, Inc. v. Worldspan, L.P.*, 774 A.2d 320, 327 (D.C. 2001) (quoting 17A Am. Jur.2d Contracts § 402 (1991)). Regardless of whether the Note is

---

[5]Holibaugh also argues that he is a personal guarantor under the Note, which renders the note non-negotiable. However, Holibaugh signed as the sole borrower or maker of the Note, and there is no guarantor or co-borrower. Therefore, this argument fails on its factual premise, and there is no need to discuss the legal argument involved.

completely integrated or partially integrated as Holibaugh contends, we may not consider evidence that contradicts its plain and unambiguous terms. *See Segal Wholesale, Inc. v. United Drug Serv.*, 933 A.2d 780, 783-84 (D.C. 2007) (explaining that even where a writing is partially integrated, meaning there may be additional consistent terms not addressed therein, only evidence that is consistent with the terms in the agreement is permitted).

The plain and unambiguous terms of the Note hold Holibaugh personally liable for the full amount of the Note, as the sole borrower. Thus, Holibaugh's testimony regarding Pukke's oral representations contradict these unambiguous terms and is excluded pursuant to the parol evidence rule absent an exception.

Holibaugh attempts to bring this evidence within the fraud exception to the parol evidence rule based on his alleged unilateral mistake as to Pukke's intent to enforce the Note. However, evidence of oral agreements to vary a party's obligation under the terms of a note, such as a promise not to enforce, is not considered fraud for purposes of the fraud exception to the parol evidence rule, and, consequently, such evidence is excluded. *See Fr. Winkler KG v. Stroller*, 839 F.2d 1002, 1005-1006 (3rd Cir. 1988) (discussing case law across the country applying this principle). Therefore, the district court properly excluded this evidence, and there are no material facts in dispute to preclude summary judgment.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*

GREGORY, Circuit Judge, dissenting:

The question in this appeal is whether a district court may hear an action brought by a receiver against a defendant,

when both the claim and the defendant are unrelated to the underlying action in which the receiver was appointed, absent congressional authorization. I believe that it may not and respectfully dissent from the majority's contrary holding.

***

Our resolution of the jurisdictional question here is complicated by two clearly conflicting lines of authority: First, in a string of cases between 1895 and 1935, the Supreme Court declared that district courts have jurisdiction to hear any claims brought by receivers properly appointed by the district court. *See Alexander v. Hillman*, 296 U.S. 222, 238 (1935); *Pope v. Louisville, N.A. & C. Ry. Co.*, 173 U.S. 573, 577 (1899); *White v. Ewing*, 159 U.S. 36, 38-39 (1895). On the other hand, in a more recent series of decisions, the Supreme Court changed course and held that federal courts lack power to hear any claims without congressional authorization. *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 539-40 (2002); *Finley v. United States*, 490 U.S. 545, 552 (1989). In doing so, the Court has criticized and rejected other, expansive descriptions of ancillary jurisdiction made by the Court at the turn of the Twentieth Century. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 379 (1994).[1]

Faced with this conflict, I feel compelled to follow the more recent line of authority. In *Finley*, the Court made clear

---

[1]In *Kokkonen*, the Court confronted the view, previously expressed by the Court that ancillary jurisdiction encompassed any action "to obtain and secure the fruits, benefits and advantages of the proceedings and judgment in a former suit in the same court by the same or additional parties or to obtain any equitable relief in regard to, or connected with, or growing out of, any judgment or proceeding at law rendered in the same court." 511 U.S. at 379 (quoting *Julian v. Central Trust Co.*, 193 U.S. 93, 113-14 (1904)) (internal alterations omitted). The Court, in an opinion by Justice Scalia, dismissed this application of ancillary jurisdiction as overly "expansive," stated that ancillary jurisdiction "does not stretch so far as that statement suggests," and refused to follow it. *Id.*

that absent congressional legislation, a court with "jurisdiction over claims involving particular parties does not [have] jurisdiction over additional claims by or against different parties." 490 U.S. at 556; *see Raygor*, 534 U.S. at 539-40 (explaining "that absent authorization from Congress, a district court could not exercise pendent jurisdiction over claims involving parties who were not already parties to a claim independently within the court's subject matter jurisdiction").[2] Congress then enacted 28 U.S.C. § 1367, which permits federal courts to hear additional claims by or against additional parties if those claims "are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Id.* § 1367(a). If, after *Finley*, district courts may not hear new claims involving additional parties without an express grant of jurisdiction by Congress, and Congress, in § 1367, grants the federal courts power only to hear new claims involving additional parties to the extent those claims are part of the same case or controversy, then it must be that district courts may not hear new claims involving additional parties that are not part of the same case or controversy as the underlying claim.

In light of *Finley* and its progeny, § 1367 can only be read to abrogate the common law doctrine, announced in *White* that courts have the power to hear any and all new claims against additional parties brought by a receiver. *White*, *Pope*, and *Hillman* can no longer be good law to the extent they allow a receiver to bring new claims against a new defendant if that claim lacks any connection to the underlying suit that the district court is competent to hear.

The receiver here was appointed to manage Pukke's assets

---

[2]So while it is true, as the majority maintains, that absent evidence of contrary intent we may assume that Congress acted against the backdrop of the common law, *see* Maj. Op. at 7, after *Finley*, that backdrop prohibits courts from hearing ancillary claims without congressional authorization.

in a civil enforcement action brought by the FTC alleging that Pukke, through his corporations, Ameridebt and DebtWorks, engaged in a fraudulent debt counseling scheme. After the parties settled the underlying suit, the receiver brought this action under District of Columbia law against Holibaugh to collect on a debt Holibaugh owed to Pukke's other corporation, Infinity, and which undisputedly had no connection whatever to the counseling scheme. Therefore, contrary to the receiver's claim, the district court lacked jurisdiction to hear the suit under § 1367, both because it was filed after the underlying suit was resolved and because there was no connection between the appellant or the cause of action and the underlying FTC suit. *Id.* § 1367(a); *see Peacock v. Thomas*, 516 U.S. 349, 355-56 (1996) (holding that the Court lacked ancillary jurisdiction to hear claims brought after underlying suit was resolved and where allegations in subsequent suit, which sought to pierce the corporate veil, had "little or no factual interdependence" with underlying question of whether corporate officers had breached their fiduciary duty).

As I read its opinion, the majority agrees that § 1367 does not provide the district court with jurisdiction to hear the receiver's claim against Holibaugh. Instead, the majority attempts to salvage the long-lost doctrine of unlimited receivership jurisdiction by claiming that it falls within the "proceedings prong" of ancillary jurisdiction. Under this prong, district courts have very narrow power to hear "subsequent proceedings for the exercise of a federal court's inherent power to enforce its judgments." *Id.* at 356; *see Kokkonen*, 511 U.S. at 379-80. The relationship between this case and an enforcement proceeding, however, brings to mind images of a square pegs in round holes and bridges too far.

The majority is correct to note that the Supreme Court has recognized the continuing vitality of enforcement jurisdiction absent explicit congressional authorization, *see* Maj. Op. at 6-7, but the very case the majority cites for the proposition makes it equally clear that this case cannot be redefined as an

enforcement proceeding. In *Peacock*, the Court recognized a district court's power to use garnishment, mandamus, or attachment against a third-party to enforce its judgment against a defendant. 516 U.S. at 356-57. The Court explicitly stated, however, that enforcement jurisdiction did not extend to "a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Id.* at 357. And it went on to say that enforcement jurisdiction did not apply to "proceedings that are 'entirely new and original' or where 'the relief sought is of a different kind or on a different principle' than that of the prior decree." *Id.* at 358 (internal citations and alterations omitted). In short, where a subsequent claim "is founded not only upon different facts than the [underlying] suit, but also upon entirely new theories of liability," the court's ancillary enforcement jurisdiction is inapplicable. *Id.*

The claim advanced by the receiver here, to recover on a note against Holibaugh, is everything that *Peacock* explicitly says enforcement jurisdiction is *not*. The receiver has never suggested, let alone pleaded or proven, that its suit against Holibaugh has anything to do with the judgment entered by the district court in conjunction with Pukke's settlement with the FTC. It is an "entirely new and original" action, seeking a legal remedy that is based on "different facts" *and* "entirely new theories of liability" from the FTC action, *id.*, to wit, a claim to recover on a note against a defendant who had nothing to do with the underlying fraud.

Simply put, the receiver's suit against Holibaugh is a prototypical example of an entirely new claim against a new party, which cannot be brought in federal court absent statutory authorization. *Finley*, 490 U.S. at 556. Because neither § 1367 nor any other statutory provision grants the district court jurisdiction to hear this claim, I would vacate the judgment and remand with instructions to dismiss the suit for lack of subject matter jurisdiction.