ROYAL TRUST CO. et al. v. WASHBURN, B. & I. R. R. CO.

PIKE v. FROST.

(Circuit Court of Appeals, Seventh Circuit. February 11, 1905.)

No. 876.

1. CONTEMPT OF COURT—SUIT TO ENJOIN EXECUTION OF DECREE—FEDERAL AND STATE COURTS.

Persons who instituted a suit in a state court to enjoin a receiver of a federal court from enforcing its order directing him to tear up the track of a railroad, of which it had acquired jurisdiction and possession in foreclosure proceedings, did not thereby commit an act of contempt against the federal court; the state court having the right to determine whether and to what extent it had jurisdiction and power to grant the relief prayed for, short of actual physical interference with the possession of the federal court.

[Ed. Note.—Restraining proceedings in federal courts, see note to Clapp v. Otoe County, 45 C. C. A. 591.]

2. SAME—FORCIBLE INTERFERENCE WITH EXECUTION OF DECREE.

A federal court, having acquired possession through its receiver of the property of a railroad company in a suit to foreclose a mortgage thereon, had the right to enter such orders as it deemed within its power in respect to the property, and to execute such orders without actual and physical interference by others, and any one forcibly interfering with their execution is guilty of a contempt of court, under whatever authority he may assume to act.

In Error to the Circuit Court of the United States for the Western District of Wisconsin.

For opinion below, see 113 Fed. 531.

The original case—the Royal Trust Company and Horace Oakley, Trustees, v. Washburn, Bayfield and Iron River Railroad Company—was a suit brought in December, 1898, to foreclose a trust deed upon the property of the railroad company, to secure bonds to the extent of five hundred thirty-five thousand dollars, of which two hundred thirty-seven thousand dollars had, before the suit was brought, been duly certified by the trust company. The suit was based upon the default, July 1st, 1898, of interest due, and A. C. Frost was appointed receiver in aid.

The plaintiffs in error were held guilty of contempt of court on the petition of Frost as receiver, and were fined each, except McLeod and Lien, two hundred and fifty dollars, with imprisonment in the county jail of Dane County, Wisconsin, until such fine was paid; McLeod and Lien being sentenced to imprisonment in the same jail for the period of sixty days. 113 Fed. 531.

The hearing upon the contempt matter was upon the petition of the receiver, and the answers of the respondents. These, read together, show that by July 5th, 1901, the receiver had already expended on the property, two hundred twenty thousand, five hundred eighty-one dollars and thirty-four cents, for which receiver's certificates and notes had been issued; and that on that date, a decree in foreclosure was entered, decreeing that unless such amount, together with the further amount of two hundred seventy-nine thousand, one hundred sixty-one dollars and twenty-five cents due upon the mortgage, and interest, were paid within a time therein named, the mortgage should be foreclosed. The decree ordered that the property should be sold as an entirety, and fixed the upset price at not less than two hundred twenty-five thousand six hundred dollars.

Three months later—October 12th, 1901—on the petition of the holders of receiver's certificates, the order of July 5th, 1901, so far as it decreed the sale of the property as an entirety at the upset price named, was annulled. In this later order, the court found that it was impossible to sell the property as an entirety; that the operation of the railroad was a losing venture, not

139 F.—55

meeting operating expenses; that the deficit in operation during the receivership alone, was fourteen thousand, three hundred twenty-two dollars, and eighty-four cents, exclusive of interest on the receiver's certificates; that there was no prospect of a decrease in such deficits in the future; that the rails, motive power and equipment were constantly ·depreciating in value; that there were no funds available to further continue the operation of the road; that there was no such public interest or business in the territory tributary to the road, as would justify its continued operation; and thereupon, the receiver was authorized and directed forthwith, to take up the rails and fastenings of the road, and to sell such rails, along with the motive power, rolling stock, equipment, machinery, tools, furniture, fixtures and other personal property, at public or private sale, for the best price that could be obtained.

The county of Bayfield had projected this road, donating to its construction two hundred thousand dollars of county bonds, in exchange for a like amount of stock. Upon the entry of the order in the United States Court just named, Pike, Sprague, Jacobs, Lemke, Hirsch, Maxcy and the County of Bayfield by McLeod as District Attorney, filed their petition in the Circuit Court of Bayfield County, in which the proceedings, in the Circuit Court of the United States above named, were set forth—it being averred that the County of Bayfield had appeared to resist the entry of the order named, but was not permitted to be heard—the prayer of the petition being that a peremptory writ of mandamus issue from the Bayfield Circuit Court, requiring the railroad company, and Frost, as receiver, to continue to operate the railroad, to continue to maintain the track and road bed, and to refrain from tearing up any part of the track and road bed.

On this petition a writ as prayed for was issued, and put into the hands of Lien, plaintiff in error, as sheriff, to serve. The writ commanded the railroad company and Frost, receiver, from the time of the service of the writ, to continuously operate the railroad, for the carriage of freight and passengers, and to continue to maintain the track and road bed, and to refrain from tearing up any part of the track or road bed, or from selling or removing any part or portion of it. Thereupon Lien served the writ upon the agents of the receiver engaged in tearing up the track; and on their persisting in their work—Lien "with divers other persons," as Frost's petition states it, "whose names are unknown to the petitioner, but who were and are, as your petitioner believes, deputy sheriffs of said Bayfield County, violently and with force of arms, prevented the agents, employees and servants of your petitioner from proceeding with said work, and seized and arrested the said agents, employees and servants, and took them to Washburn, under the pretended authority of the said writ of injunction, and now restrains them and threatens to treat similarly any other agents, employees or servants of your petitioner."

This is not denied by Lien. On the contrary it is justified, as having been done under, and by virtue of the peremptory writ of mandamus, and the injunction in his hands, and by virtue of the further fact that such agents were committing, in his presence, a crime against the state of Wisconsin, and its laws.

Neither the petition, nor answers, show that either of the other plaintiffs in error were present, or abetted in these transactions, (they took place on the seventh of January, 1902) except as the issuance of the writ may be said to be in aid of such transactions.

The further facts are stated in the opinion.

A. W. McLeod, for plaintiffs in error.

M. F. Gallagher, for defendant in error.

Before GROSSCUP and BAKER, Circuit Judges, and SEAMAN, District Judge.

GROSSCUP, Circuit Judge (after stating the facts as above), delivered the opinion:

It is not seriously contended, in argument, that the acts of the agents of the United States Court, acting under the order of that court, were a crime within the provisions of Section 4386 of the Revised Statutes of Wisconsin. That statute was wholly directed to another purpose. But it is urged in argument by the plaintiffs in error, that the Circuit Court of the United States was without power to take up the rails, or discontinue the operation of the road; that the rails, once laid, became a part of a public highway, was mortgaged as such a highway; and as such highway could be dismembered or discontinued only by authority or consent of the state.

On the other hand it is argued by the receiver, that the order of the Circuit Court of Bayfield County was beyond its power; that the railroad having gone into the possession of the United States Court, the State Court was without power to do anything that would hinder or interfere with the United States Court's exercise of such possession; and that the institution and pendency of the proceedings for mandamus, and the issuance of the writ was such hindering and interference; and, therefore in contempt of the order, jurisdiction and possession of the United States Court.

We do not find it necessary to pass on either of these questions as abstract legal propositions. Whether it was within the power of the United States Court, under the circumstances named, to discontinue the operation of the road, and tear up the rails, we need not determine. It is enough that the question of such power was triable in the United States Court, having the property in its possession—that the court had jurisdiction, to the extent at least of determining whether under the laws of Wisconsin it had the power in question.

Whether it was within the power of the State Court to forbid such discontinuance of the railroad as a public highway, notwithstanding that the acts forbidden were being done by employees and agents of the United States Court, is a question we need not determine. Here, again, it is enough to say that the question of such power was triable in the State Court—the State Court having jurisdiction to determine, for itself, whether it had such power. The point at which interference with the possession of the federal court begins, is not the invoking in the State Court of its power in that respect, but the attempt to exercise such power, to the extent that the exercise of such power would interfere, actually and physically, with the possession of the property by the United States Court. The United States Court, being in possession of the property, had the right, without actual and physical molestation by others, to enter such orders as it deemed within its power in the premises, and to execute such orders. The State Court had the right, without molestation by others, to determine for itself, how far it had power to forbid or prevent the discontinuance of the railroad, or the tearing up of the rails. The limit of the State Court's power, possession being in the United States Court, was that it should not actually or physically interfere with such possession. If it be said that the concurrent exercise of these two juris-

dictions, though they stop at actual physical conflict, are necessarily incompatible and antagonistic, the answer is, that in the end, the jurisdictions flow together, both streams coming finally within the jurisdiction and determination of the Supreme Court of the United States.

The case thus divides itself, as to the several plaintiffs in error, into two aspects. As to Lien, it shows acts and conduct in contempt of the jurisdiction, orders and possession of the United States Court. Had Lien been content to serve the writ, reporting to the State Court for its final action, the disobedience of those on whom it was served, he would have remained within his right as the executive officer of the State Court. But he was not thus content. He seized the agents and employees of the United States Court, carried them away from their work, and threw them into prison. In the doing of this there was actual and physical interference with the possession of the United States Court, and therefore contempt of its jurisdiction, order and possession.

As to the other plaintiffs in error, it is not shown—it is not even averred in the petition—that they did anything further than to institute the suit in the Bayfield Circuit Court, and obtain the order culminating in the writ. If by advice, presence, or other means, they encouraged or abetted Lien in his subsequent physical interference with the agents of the United States Court, the fact is not brought out. We find nothing, therefore, either in the petition, or record, that justifies the judgment that they were in contempt of the United States Court.

The judgment of the Circuit Court as to Lien, is affirmed, and as to Pike, Sprague, Jacobs, Lemke, Hirsch, Maxcy and McLeod, is reversed, with instructions, as to them, to dismiss the petition.