## LEWIS v. PECK et al.

(Circuit Court of Appeals, Seventh Circuit. April 17, 1907. Rehearing Denied May 17, 1907.)

### No. 1,335.

INJUNCTION—VIOLATION—JURISDICTION TO GRANT INJUNCTION.

A decree of a federal court foreclosing mortgages on the property of corporation and directing a sale thereof, after determining the rights and priorities of the parties under mortgages given by successive owners, provided that the purchaser at the sale should hold the property free and discharged from the lien of all the mortgages and free from all claims of every kind or nature of any of the parties or those claiming under them; also, after reserving certain questions for future disposition, it provided that "jurisdiction of this cause is retained in this court for the purpose of determining all such reserved questions and of enforcing the conditions of this decree and of any further order made herein, and any party to this proceeding may apply to the court for further orders and directions at the foot of this decree." A sale was made, and certain dissatisfied bondholders under one of the mortgages who were not parties to the suit, except by representation by the trustee in the mortgage, appeared individually and objected to its confirmation. Their objections were overruled and the sale confirmed by an order, which, inter alia, prohibited and enjoined all parties to the suit and all persons claiming through or under them, their attorneys, solicitors, etc., "from setting up any pretended or alleged title against the title of the purchasers." Such dissatisfied bondholders, having been denied an appeal on the ground that they were not parties, filed a bill in a state court against the purchasers and others, praying for a foreclosure of their mortgage, whereupon their solicitor was cited into the federal court on petition of the purchasers and adjudged in contempt for violation of its injunction in instituting such suit. *Held*, that the injunctional provision of the order of confirmation was not within the power reserved by the court by the decree to enforce its conditions, and, not being within any issue in the suit, was without jurisdiction and void as against the individual bondholders or their counsel, who were not parties in any sense which would confer jurisdiction over their persons, to make such order binding upon them and to deprive them of their right to a hearing on their alleged individual rights in any court of competent jurisdiction; and that it afforded no basis for the proceedings in contempt.

[Ed. Note.—Liability of attorneys, see note to Anderson v. Comptois, 48 C. C. A. 7.]

Grosscup, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Southern District of Illinois.

This writ of error brings for review a judgment of the Circuit Court and sentence of imprisonment against the plaintiff in error, James Hamilton Lewis, upon finding of contempt of court, in the violation of an injunctional order of such court. The proceedings in which the injunctional order was issued were under the title of consolidated actions of Farmers' Loan & Trust Company, Trustee, and United Waterworks Company, Limited, v. New England Waterworks Company, Alton Waterworks Company et al.—one a bill for foreclosure of a mortgage and the other a creditors' bill—upon which decree had theretofore been entered, which is the same decree appealed from in New England Waterworks Co. v. Farmers' Loan & Trust Co., 136 Fed. 521, 69 C. C. A. 297, and affirmed by this court, and the general nature of the bills and decree are sufficiently described in the opinion there filed and reported.

154 F.—18

Upon the coming in of the master's report of sale under that decree, objections to confirmation of the sale were interposed by one Allen A. Brown and other persons, as individual bondholders under a trust deed, made by the Boston Water & Light Company (a defendant in such decree) to the International Trust Company, trustee (also a defendant therein), setting up, among other grounds, that they were not made parties to such suits, had no notice thereof, and were "being deprived of their property without notice and without due process of law"; also that the purchase price was grossly inadequate. The plaintiff in error appeared for and represented these bondholders in opposing the confirmation. On May 5, 1905, the court entered an order or decree of' confirmation of the sale, as reported, to Samuel L. Peck, G. R. Leighton, Charles G. Sanford, and Russell Frost, a committee representing bondholders, for the price named. The order recites, among other matters, that the purchaser moved to strike out the objections filed by Brown and others, and then orders "that the said objections and exceptions of the said Allen A. Brown and others be and the same are hereby overruled and held for naught," and that the sale is thereupon confirmed; and the following is the concluding provision:

"And it is further ordered, adjudged, and decreed that, upon the completion of the payment of the purchase price by the said purchasers, the delivery to them·of the deed of the said master and the delivery of the property to them by the said receiver, that the title to the said property and assets as against each and every party to this action, and all persons claiming, or to claim, under them, or either of them, be vested absolutely in the said purchasers and their assigns, and all parties to this suit, and all persons claiming, or to claim, by, through, or under them, be, and they and their and each of their attorneys, solicitors, officers, and agents are, forever prohibited and enjoined from setting up any pretended or alleged title, as against the title of the said purchasers acquired by means of said master's deed in this decree mentioned, and which said pretended or alleged title may have arisen by, through, or under any of the said parties to the said cause, and from in any way interfering with or disturbing the said purchasers, or their assigns, in the full and free use and occupation and enjoyment of all the said property so acquired by said purchasers by means of said sale and said deed from the said master.

"It is further ordered, adjudged, and decreed that the said purchasers have leave at the foot of this decree to apply for further directions and for any amendment thereof until the last day of the next term of this court, and for that purpose this cause will, upon adjournment of the present term of this court, stand continued upon the docket of this court until the last day of the next term thereof."

The objecting bondholders then made application to Mr. Justice Day of the Supreme Court for allowance of an appeal to that court, but the appeal was disallowed with a letter addressed to the plaintiff in error, which is made a part of the record, stating in effect that the bondholders were not named as parties, so that they were not entitled to a review on appeal, remarking that "their rights, if invaded, must in my opinion be worked out in an original proceeding." Subsequently, Brown and other bondholders filed a bill in the circuit court of Madison county against the Boston Water & Light Company and other defendants, including the purchasers under the foreclosure decree above mentioned, for foreclosure of their alleged mortgage, and the plaintiff in error appeared therein as solicitor for the complainants. Thereupon the purchasers under the foreclosure decree petitioned for a rule to be entered by the Circuit Court of the United States, upon the plaintiff in error, to show cause why he should not be punished for contempt of court for filing such bill and issuing summons thereupon, in alleged violation of the injunction of that court. The petition was entertained by the court, under the title of the original consolidated suits, upon an order "that said causes be redocketed for the purposes of said petition," and that a citation issue thereupon.

The plaintiff in error submitted his sworn answer to such rule, disclaiming "any intention on his part to violate any lawful orders or decrees en-

tered by" the court, and stating that he represented Brown and other bond-holders, as their duly authorized attorney; and having applied for an appeal to the Supreme Court, which was denied with an opinion by Mr. Justice Day which is annexed to the answer, he so proceeded in behalf of such bondholders, believing that they were neither parties to nor affected by the decree of this court and were entitled to so proceed. The court on April 16th entered the order appealed from, which reads (after the title) as follows:

"In the matter of the petition of Samuel Peck, G. Ralph Leighton, Charles G. Sanford, and Russell Frost for a rule against James Hamilton Lewis to show cause why he should not be punished for a contempt of court in violating the injunction contained in the decree made and entered in the above-entitled consolidated cause on the 5th day of May, A. D. 1905.

"The above-entitled matter coming on to be further heard and the court being now fully advised finds that the said James Hamilton Lewis did file in the circuit court of Madison county, Ill., a certain bill wherein Allen A. Brown, trustee, Robert B. Wason, Harriet N. Houghton, James Schouler, C. A. Damon, Joseph C. Foster, Chas. M. Page, George W. Fairbank, M. C. Grier, Sabra Hodgkins, Wm. B. Trask, and Mary A. Evans are complainants and Boston Water & Light Company, a corporation, International Trust Company, a corporation, Alton Waterworks Company, a corporation, George W. Sumner, and Chester B. Sumner, executors of the estate of Wm. H. Sumner, James Howe, Orin Warren, Alice G. Page, John Farquhar, administrator of estate of Benjamin F. Dudley, deceased, George F. Lovett, Vernon Prouty, Frank Dromgoole, the C. H. Venner Co., a corporation, Cidele Venner, Samuel Peck, G. Ralph Leighton, Charles G. Sanford, Russell Frost, and unknown parties claiming an interest in the property described in the said bill, are defendants, praying for the foreclosure of a certain mortgage executed October 1, 1897, by the Boston Water & Light Company, of the state of Maine to the International Trust Company of the state of Massachusetts, to secure the payment of 200 bonds bearing same date for $1,000 each. The court further finds that said action is in violation of the injunction order of the Circuit Court of the United States entered May 5, 1905. It is therefore ordered that said James Hamilton Lewis be and is hereby held to be in contempt of this court and is sentenced to be imprisoned in the Sangamon county, Ill., jail for 60 days or until further order of this court. In case the above-described cause now pending in the circuit court of Madison county, Ill., is dismissed within five days from this date, said sentence of imprisonment is to be suspended."

On April 17th, under compulsion of such order, the plaintiff in error dismissed the suit so commenced in Madison county circuit court, and advised the Circuit Court of the United States of such dismissal, pursuant to and under the compulsion of such order, to save himself from the imprisonment thus imposed.

For jurisdiction to enter the injunctional order contained in the order or decree of confirmation, paragraphs 22, 25, 26, and 27 of the original decree are relied upon. Paragraph 22 provides that the purchaser thereunder, after delivery of the premises and property, "shall hold possession and enjoy the same with all rights, privileges, immunities, and franchises pertaining thereto as fully as said Alton Waterworks Company, the New England Waterworks Company, and Boston Water & Light Company, or the receiver therein, now hold or enjoy the same, or held or enjoyed, or were entitled to hold or enjoy the same at any time heretofore, and shall hold the same free and discharged" from the lien or incumbrance of all the mortgage trust deeds in this decree mentioned, and free from all claim or claims of every kind and nature of all parties to this cause and those claiming under them.

The other paragraphs read as follows:

"(25) All questions not hereby disposed of, including the settlement of the accounts of the receiver and his discharge and the amounts to be allowed said receiver and his counsel, and the amounts to be allowed said trustee, complainants, and their solicitors, and the amount to be allowed the master, and the application of moneys in the hands of the receiver to bonds and coupons or upon allowances and costs, are hereby reserved for future adjudication,

and any party interested in such reserved questions may at any time, either before or after sale, apply to this court at the foot of this decree, for further relief in respect thereto.

"(26) Any party interested in the questions hereinbefore reserved concerning coupons and interest [referring to claims of C. H. Venner Company reserved in paragraph 16, not in question], may at any time apply to this court at the foot of this decree for further relief in respect thereto.

"(27) Jurisdiction of this cause is retained in this court for the purpose of determining all such reserved questions and of enforcing the conditions of this decree and of any further order made herein, and any party to this proceeding may apply to the court for further orders and directions at the foot of this decree."

Elijah N. Zoline, for plaintiff in error.

Levi Davis, for defendant in error.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge, after stating the facts, delivered the opinion of the court.

The ultimate facts involved in this review are simple, however serious their import in the administration of equity powers and duties, and their effect in the commitment of the plaintiff in error for contempt. The propositions of law upon the general powers of the trial court to restrain the prosecution of cognate suits in other courts, and in reference to the rights and privileges of counsel in actions' so brought—which are presented in one of the aspects of this adjudication and discussed in the arguments—are not free from difficulty under the authorities. It is not needful, however, to decide either of these important general questions, unless the validity of the commitment rests upon their solution.

The injunctional order of which violation is adjudged was not contained in the express terms of the foreclosure decree, which was entered in 1903 (and affirmed upon appeal to this court), but was made a part of the order or decree entered May 5, 1905, confirming the sale made April 18, 1905, as reported to the court under the decree of 1903. Primarily, therefore, jurisdiction must appear for making, in that proceeding and at that stage, an order which became operative as a personal injunction against the individual bondholders and their special counsel, applicable to the alleged violation by the plaintiff in error, to uphold the commitment. Neither the bondholders nor the plaintiff in error were named as parties to the decree or subsequent order, nor cited in or recognized as parties of record. True, the trustee named in the trust deed securing the bonds in controversy was a party; and the general rule under such instrument and relation is firmly established that the trustee represents the bondholders in such foreclosure proceedings involving interests under the trust deed, and that his presence is sufficient to bind the rights and interests of bondholders, who are thus constructively served and present. In the foreclosure proceedings thereupon it may well be assumed that the court possessed ample power to make all needful orders or provisions, interlocutory or final, not only to foreclose interests which are represented, but to protect the res and interests involved in the litigation for complete administration.

The plaintiff in error, as attorney for several holders of bonds secured by one of the trust deeds involved in and foreclosed under the above-mentioned final decree of the federal court, filed a bill in one of the state courts, on behalf of such bondholders, wherein an independent foreclosure was sought under the trust deed, in despite of the prior decree and sale, with the purchasers thereunder named as defendants among other parties. This suit was instituted in March, 1906, when the federal proceedings were closed, with all issues therein settled, sale confirmed, and the purchasers in possession. The question whether the action was well advised or seemly, in any view, is beside the inquiry of contempt in thus attempting another foreclosure, which rests alone on the validity and interpretation of the injunctional order entered in the federal court on May 5, 1905. When that order was made, the matters before the trial court, as disclosed by the record, were the report of the master upon the foreclosure sale made under the decree and of the proceeds arising therefrom, together with the objections filed to confirmation of such sale. The issues were: Shall the sale be confirmed, with direction to convey and deliver possession to the purchasers, and distribute the proceeds in conformity with the decree? Or shall the sale be set aside, and resale or other procedure ordered? Provisions for either course were plainly within the power of the court, and its conclusions and order in conformity with the first-mentioned course are not open to question here. The further order, however, which is challenged, is a provision, not only vesting title in the purchasers "as against each and every party" to the action and "all persons claiming, or to claim, under them," but that all parties and persons "claiming or to claim by, through, or under" either party, and their attorneys and agents, "are forever prohibited and enjoined from setting up any pretended, or alleged, title as against the title of the said purchasers," and "from in any way interfering with or disturbing the said purchasers, or their assigns, in the full and free use and occupation and enjoyment of all the said property so acquired." Passing the contentions on behalf of the plaintiff in error that these terms are not applicable to the individual bondholders, and are not violated by the orderly commencement of an independent suit by bondholders, not made parties, we assume the premise for testing the validity of the injunction, that its scope was sufficient to include such suit, as the commitment for contempt rests wholly upon that purpose and interpretation.

The final decree theretofore entered (1903) was complete and binding upon all parties for the intended foreclosure, and for definition of the title which would be conveyed to the purchaser of the res upon sale, together with provisions for and terms of conveyance and possession. Except for the last-mentioned purposes of sale and conveyance, and the questions and objects reserved in the concluding paragraphs (25, 26, 27), the controversy was closed, and no further relief was open in the suit. To carry forward these specific purposes and determine the reserved questions, orders and directions were authorized at the foot of the decree, but jurisdiction was not retained beyond those which were so specified, all executory in their nature.

The sole reliance for support of the injunctional order in the terms

of the decree is in the expression of paragraph 27, which includes "enforcing the conditions of this decree" as thus reserved. Various provisions of the decree are stated in the form of conditions, and plainly within this reservation. Thus foreclosure sale is conditioned upon the failure of the defendants to pay the sums adjudged due within the time specified; and, when sale occurs, it is made subject to conditions, both of performance by the purchaser and approval by the court, with provision for resale in the event of disapproval or nonperformance. The terms or recitals which define the interests and title passing to the purchaser upon sale are in no sense "conditions of the decree" which can be enforced by subsequent orders otherwise than by the conveyances and delivery of possession as directed. To that end, it cannot be doubted that needful orders were authorized, injunctional or otherwise, to preserve the integrity of the property and subject-matter in the hands of the court from interference or disturbance in any manner, to complete the performance of such conveyance and delivery. No remedy, however, not within the contemplation of the foreclosure decree was thus left open to be administered at its foot. The purchaser acquired under the sale and conveyance all the title and interests of parties which the decree was competent to confer. With no obstacle in the way of the conveyance and possession can the jurisdiction so retained extend to injunctional relief in favor of the purchasers (not parties in any sense until approved as purchasers), to reach these dissatisfied bondholders individually (not parties of record), to enjoin them from suing upon the bonds?

The right of the purchaser or his successor in interest to invoke the jurisdiction of the trial court, by supplemental bill in the action, against a disturber of title and possession so acquired, in derogation of the decree of foreclosure, is expressly upheld in Julian v. Central Trust Co., 193 U. S. 93, 109, 24 Sup. Ct. 399, 48 L. Ed. 629, so that the exercise of jurisdiction to prevent actual interference is unquestionable, when the parties are before the court under issues duly made. No authority is brought to our attention, which sanctions either (1) supplementary injunctional orders of the present nature, without personal service and issue raised upon the infringement; or (2) enjoining the mere commencement of suits in a state court, with no disturbance of possession, unless within the exception named in section 720, Rev. St. [U. S. Comp. St. 1901, p. 581]. And we are of opinion that the order in question, in so far, at least, as it was treated as operative against the filing of bills on behalf of individual bondholders, was not within the limited jurisdiction reserved in the trial court.

The doctrine is well established that the right of a court of equity to decide all questions arising in the case, when jurisdiction is once acquired, is subject to important limitations; that it extends only to controversies which arise and are submitted by proper proceedings between adverse parties. As stated in Windsor v. McVeigh, 93 U. S. 274, 282, 23 L. Ed. 914:

"All courts, even the highest, are more or less limited in their jurisdiction. * * * Though the court may possess jurisdiction of a cause, of the subject-matter, and of the parties, it is still limited in its modes of procedure, and in the extent and character of its judgments. It must act judicially in

all things, and cannot then transcend the power conferred by the law. * * * So a departure from established modes of procedure will often render the judgment void. * * * The decree of a court of equity upon oral allegations, without written pleadings, would be an idle act, of no force beyond that of an advisory proceeding of the chancellor. And the reason is that the courts are not authorized to exert their power in that way."

When a court transcends the limits of its authority in a given case, its orders are void, not merely erroneous. Id.

In the proceedings of May 5, 1905, the sole questions before the court, as before stated, were the action to be taken in reference to the sale as reported, and disposition of the proceeds. No individual holders of bonds were cited or called in to answer any application for the injunctional order; nor does it appear that application was made for it. It is true that certain of the bondholders objected to confirmation of the sale, and written specifications were filed on their behalf, by the plaintiff in error, as "appearing separately for bondholders to object to confirmation"; but upon the hearing it was ordered that "the said objections and exceptions" be and they were "overruled and held for naught." These objectors were there for no other purpose, and were out of the proceeding when their objections were overruled; and no conduct appears upon the part of either to authorize the exercise of jurisdiction in personam over the plaintiff in error or his clients to restrain them from setting up or suing upon their supposed independent claims, however groundless such claims may appear when brought to hearing.

The contention in support of the order and its application to the suit commenced by the plaintiff in error is twofold and substantially this: That the order was valid against the trustee, who represented the bonds in controversy, and was a party to the proceedings, and was thus authorized and made binding as a personal injunction against each of the bondholders so represented. We are not satisfied that the premise is sound of right to enjoin the trustee; but, however that may be, we are satisfied that the injunction was inoperative as against the proceeding in question on the part of the bondholders.

The property and subject-matter of the decree were neither molested, nor threatened with disturbance in the hands of the court or pending administration, so that no need appears for an injunction to preserve the status. If suit were commenced upon the bonds, either in that court or elsewhere, no deprivation of rights which were lawfully conferred by the prior decree of the federal court could have judicial sanction, as the application for and grant of a restraining order necessarily assumes to justify the restraint. The mere institution of suit in such case does not disturb the prior jurisdiction or adjudication in any degree. As said by Judge Grosscup, speaking for this court, in Copeland v. Bruning, 127 Fed. 550, 552, 63 C. C. A. 435, in reference to like contention that a suit in the state court "challenged the decree of the federal court":

"Let this be admitted, even then the injunction is not justified, for to the extent that the subject-matter of the suit in the state court was already settled by former adjudication, the defense should have been by plea in the court where the suit was brought, and not by injunction in another jurisdic-

tion. No possession of the res was involved, and no conflict of courts could have followed, that would have affected the decree in the United States court."

Again, in Royal Trust Co. v. Washburn, B. & I. R. R. Co., 139 Fed. 865, 867, 71 C. C. A. 579:

"The point at which interference with the possession of the federal court begins is not the invoking in the state court of its power in that respect, but the attempt to exercise such power, to the extent that the exercise of such power would interfere, actually and physically, with the possession of the property by the United States court."

In the case last cited an adjudication of the federal court committing attorneys for contempt of that court was reversed, although they had applied for and obtained an injunction in a state court against the execution by officers of the federal court of the final decree of such court, and had delivered the restraining order to the sheriff for enforcement. While commitment of the sheriff was upheld, for actual invasion and interference, the attorneys were held not guilty, as their procedure was not an invasion of the federal jurisdiction. Section 720, Rev. St. [U. S. Comp. St. 1901, p. 581], expressly prohibits an injunction "to stay proceedings in any court of a state," except as authorized in bankruptcy; and, while this provision is not applicable when the jurisdiction of the federal court is disturbed thereunder by actual invasions (Julian v. Central Trust Co., supra), it may rightly be applicable to deny injunctional relief against orderly proceedings in any court, even by parties, without such invasion (Guaranty Trust Co. v. North Chicago St. R. Co., 130 Fed. 801, 805, 65 C. C. A. 65). The court may exercise ancillary jurisdiction, as in the Julian Case, when properly invoked on behalf of the purchaser under the decree, to prevent invasion of rights which were adjudicated and vested in such purchaser; but we do not understand that sanction appears in any of the authorities, either for warranty of title or possession upon judicial sale, or for an injunctional order to prevent future litigation against the purchaser, beyond the saving effect of the decree. Under the doctrine of caveat emptor, which is strictly applicable to all judicial sales (The Monte Allegre, 9 Wheat. [U. S.] 616, 645, 6 L. Ed. 174; Rorer on Judicial Sales, §§ 174, 475, 476, 528), authority for such provision in the order may well be doubted, even as against the trustee.

Laying aside, however, the question whether such injunction can be granted as against parties who are personally served, the plaintiff in error and bondholders represented by him were not parties in any sense which would authorize jurisdiction over their persons to make such order binding upon them. Assuming that the foreclosure suit and decree bound the holders of all bonds, through the substituted service upon the trustee, it was thus effectual only as a proceeding in rem and to the extent of their interest in the res, and authorized no procedure or relief in personam against the individual bondholders, constructively bound by such decree. Pennoyer v. Neff, 95 U. S. 714, 727, 24 L. Ed. 565; 9 Notes U. S. Rep. 339. So, if the injunctional order were germane, authorized, and operative as

against the trustee, it was not operative against the individual bond-holders, who were not served and not subject to jurisdiction in personam. Hawley v. Fairbanks, 108 U. S. 543, 551, 2 Sup. Ct. 846, 27 L. Ed. 820; Parsons v. Greenville, etc., R. Co. (per Mr. Chief Justice Waite), 1 Hughes, 279, Fed. Cas. No. 10,776; In re Reese (C. C.) 98 Fed. 984, 986; Fellows v. Fellows, 4 Johns. Ch. (N. Y.) 25. Whatever the interests or rights of the bondholders may be under the terms of the trust deed—whether within the general rule and thus fully represented and foreclosed by the presence of the trustee, or exceptional as they contend—they are bound by the decree only to the extent authorized by the trust deed in such representation. If they have claims of independent right, not so represented, as they contend, they are neither within the terms of the order, as claimants under the trustee, nor subject to the jurisdiction of the trial court for any form of injunction against their exercise of independent right to sue upon such claim.

While the trust deed was before the trial court, as part of the sub-ject-matter in the foreclosure suit, and (presumptively) construed oth-erwise in entering the final decree, the bondholders were not personally served and their contention was not heard in such interpretation and entry. Whatever be their actual right, or the effect to be given that adjudication, they cannot be restrained in that proceeding—to say the least, without personal service upon them—through any injunction against the trustee, from the common right of suit upon their alleged independent claim, which arises under their grantor, not under the trustee. If res judicata, or otherwise without merit, such determina-tion, in the first instance at least, is for the forum in which such suit is brought, and the court of prior jurisdiction of the subject-matter cannot, as we believe, enjoin such procedure in another court of co-ordinate jurisdiction, nor can it rightly be assumed by any court, in thus directing conveyance to a purchaser under its decree, that co-ordinate judicial tribunals would disregard such decree or fail to give it due effect when so involved in subsequent litigation.

We are of opinion, therefore, that the injunctional order in ques-tion was without force against the individual bondholders or their attorney, and that the plaintiff in error was not guilty of contempt in his proceedings in the state court.

GROSSCUP, Circuit Judge (dissenting). Though the facts are fully and accurately stated in the opinion of the court, I shall sum-marize such of them, in their logical order, as are necessary to bring out the view upon which this dissent is founded.

The original bill was not the ordinary and usual bill for fore-closure, nor was the decree the ordinary and usual decree foreclosing a mortgage. The bill brought to the attention of the court the fact that certain property claimed by the New England Water Company as its own, free from the Farmers Loan and Trust Company mortgage, and mortgaged by the New England Company as unencumbered prop-erty to the International Trust Company, was not in fact property free from the Farmers Loan and Trust Company mortgage, but was property subject to the Farmers Loan and Trust Company mortgage

as after acquired property; and had not in fact been mortgaged unencumbered to the International Trust Company, but was not subject to that mortgage in any respect; and upon issues made upon these contested questions (the New England Water Company and the International Trust Company being in court for themselves and those who claimed under them) the decree of foreclosure, as a basis on which to foreclose the Farmers Loan and Trust Company mortgage, judicially determined that the property in dispute was subject to the Farmers Loan and Trust Company mortgage, and that, at the sale decreed, the purchaser should take the same free and discharged from the lien or encumbrance of the alleged mortgage by the New England Company to the International Trust Company in the decree mentioned, and free from all claim or claims, of every kind and nature, of all parties to the cause, and those claiming under them; jurisdiction being retained for the purpose of "enforcing the conditions of this decree, and of any further order made herein."

Under the decree thus entered—a decree judicially determining the legal status of the property in dispute—all the property, including the property in dispute, was offered for sale, under a provision that a committee of bondholders represented by the Farmers Loan and Trust Company might bid; and, should they become the purchasers, might pay for the same, by turning in cash sufficient to discharge a previous mortgage in which they were not interested, and by paying in cash to the bondholders not represented by the committee, their proportion of the purchase price, together with costs of suit—the bonds of those represented by the committee to be turned in for the balance; under which provisions—all of them provisions in the decree—the committee made the highest and best bid for the property.

· When this sale came to the court for confirmation, the appellant appeared and filed objections as counsel for bondholders claiming under the International Trust Company's mortgage (he had also been counsel throughout the preceding litigation) on various grounds, including one that the selling price was too small, but chiefly on the ground that the individual bondholders whom he now appeared for, not having been parties, in name at least, to the previous proceedings, were not bound by the decree, and still retained, notwithstanding the decree, a lien or claim upon the property in dispute.

The filing of these objections put the posture of affairs thus: The court had a bid, based upon a decree that the purchaser was to obtain the property in dispute free and clear from the claim of the International Trust Company, and those claiming under it (meaning of course these individual bondholders); a bid that required that large sums in cash should be paid to a previous mortgagee and to bondholders not represented. But the individual bondholders claiming under the International Trust Company were now in court insisting, that as against them, notwithstanding the clear terms of the decree, the purchaser should obtain no such free and unencumbered title. So the practical question before the court was: Are these individual bondholders foreclosed by that decree, as to this disputed property, or are they not; for if foreclosed, the court could give title free and clear of encumbrance according to the provisions of the decree; while

if not, the purchasers were not obtaining the title free and clear of encumbrance that they had a right, from the decree to expect. The question was a practical question and a pressing one—one on which the court ought to have power to take a practical and effective course.

Unquestionably, to my mind, the court in overruling these objections, determined—was bound to determine—that the individual bondholders were bound by the original decree, and that the purchaser would take the property free from their claims. There is no other reason or logic in the ruling. And unquestionably too, the injunctional order included in the decree of confirmation was intended by the court as a method of protecting the purchaser against the disregard, by the individual objecting bondholders and their counsel, of this ruling—a step taken by the court to secure to the purchaser the kind of title that the court in the original decree had offered to the purchaser. Now was the court without power to put that ruling into practical effect?

The opinion from which I dissent does not hold that the court had no power, in its original decree, to order the property sold, free and clear from the claim of the International Trust Company and those claiming under it; nor that the individual stockholders, whose counsel appellant was, are not parties claiming under the International Trust Company, and for that reason not bound by that portion of the decree. On the contrary it proceeds on the assumption that in the original decree the court had such power; and that these individual bondholders are thus bound.

Nor does the opinion from which I dissent hold, that supplemental to the foregoing power the court would not have had the power, in the original decree, to enter an injunctional order restraining the International Trust Company, and those claiming under them, and their attorneys, from setting up any pretended title against the title of the purchasers acquired under the court's deed. On the contrary, respecting that question, the opinion says:

"The propositions of law upon the general powers of the trial court to restrain the prosecution of cognate suits in other courts, and in reference to the rights and privileges of counsel in actions so brought—which are presented in one of the aspects of this adjudication and discussed in the arguments—are not free from difficulty under the authorities. It is not needful, however, to decide either of these important general questions, unless the validity of the commitment rests upon their solution."

And further on the opinion proceeds:

"In the foreclosure proceeding, therefore, it may well be assumed that the court possessed ample power to make all needful orders or provisions interlocutory or final, not only to foreclose interests which are represented, but to protect the res and interests involved in the litigation for complete administration."

The opinion from which I dissent does not show, specifically at least, that the injunctional order subsequently entered was not known to the individual bondholders or appellant, before the acts constituting the contempt were committed; though it does state that neither the bondholders nor the plaintiff in error were named as parties to the injunctional order, nor cited in, nor recognized as parties of record.

But this last statement ignores the fact fully stated elsewhere in the opinion that the injunctional order was entered as a part of the order overruling the objections filed by appellant in behalf of these individual bondholders, and presumptively, therefore, did not escape his notice.

The opinion from which I dissent, puts forth no pretension that if the injunctional order were within the power of the court to enter, appellant can defend against the contempt proceedings on the ground, either that the proposition of law on which it was founded was erroneous; or that the proceedings were defective or irregular; or that on review on appeal, or in error, the court for any reason other than that of want of power should have vacated the order. And I take it, it is too well settled for further discussion, that a party charged with contempt may not procure a review of the injunctional order entered on any ground other than want of power of the court to enter it—may not obtain a general review of an order by simply defying it.

Assuming, then, that the court, in its original decree of foreclosure, had power to enter the injunctional order (as assumed though not decided in the opinion from which I am dissenting; but decided I think in Julian v. Central Trust Company, 193 U. S. 93, 24 Sup. Ct. 399, 48 L. Ed. 629), the opinion proceeds to find that the court was without power to enter the order, in the subsequent confirmatory decree. for the following reasons as I understand them: (a) That such an order was not within the reservation contained in the original decree; (b) That such an order was not within the issues presented to the court on the confirmatory decree; and (c) That the individual bondholders, and the plaintiff in error, were not in court at the time the injunctional order was entered, upon any issue that could eventuate in such an injunction.

I take up these reasons in the order stated. First then as to the reservation in the original decree. The original decree reserves full power of "enforcing the conditions of this decree, and of any further order made herein." Why is not that broad enough to include the condition that the purchaser, at the foreclosure sale, should take title, free and clear of the claims of the International Trust Company and those claiming under them? Indeed, the proviso just named, was one of the main conditions of the decree. Upon it rested the practical question of what amount the property would sell for, or whether the property could be sold at all. To clear up that condition, the main litigation was fought out—there was no other substantial issue in the case; so that to say now that the court, in entering its original decree, did not intend to reserve power, to the extent if necessary of all the power it possessed, to enforce that condition of the decree, by any order that it might subsequently enter, is to say that the court kept its eyes and its decree open to the smaller contingencies that might transpire, but closed both its decree and its eyes to the single great contingency that might intervene to defeat the court's purpose, and the court's power to subsequently carry out that purpose.

Assuming then that the injunctional order was within the reservations contained in the original decree, is there anything in the proposition that it was not within the issues subsequently presented to the

court on the confirmatory decree, or that appellant was not in court on that order? The individual bondholders represented by appellant, and appellant himself, were, in fact, as we have seen, in court at the time the confirmatory decree, carrying along with it this injunction, was entered. The contention of the individual bondholders that they were not bound by the original decree was necessarily before the court, as already stated, when the confirmative decree was entered. The practical question raised by their objections was, whether these individual bondholders were so bound; and though the matters thus brought before the court by appellant on behalf of the individual bondholders did not, perhaps, take the ordinary and usual form of pleadings calculated to present issues, they did present substantial actual issues, upon the consideration of which the court must have predicated its judgment that the injunctional order should be entered. By what authority then, is the regularity of these proceedings now challenged? Appellant has not brought the injunctional order to this court on review or appeal, as he might have done; he has simply defied it. By what authority does he obtain a review as if, instead of defying, he had in the ordinary course of procedure appealed from it? True, as already stated, the record does not disclose a petition or other pleading formally asking them to show cause why the injunctional order should not be entered, and bringing them into court for that purpose; but being in court for any of the purposes of the case, I take it as fundamental that they were in court for all the purposes of the case; and that unless dismissed out of court, they are bound by every prohibition laid upon them, respecting the subject matter of the litigation that the court had power to lay upon them, unless, and until, it was set aside in the regular course of appeal. To hold otherwise would be to hold, as already stated, that one enjoined from doing a particular act— one not only notified of the injunction, but a party to the order in which the injunction is entered—can procure a review of the regularity of the proceedings in which it is entered by simply defying it.

The injunctional order entered is an unusual one. But the case in some respects is unusual. The practical consideration behind the court's determination of the status of the disputed property—whether it should be sold free and clear of the claim of the International Trust Company and those claiming under it, or not—was not merely that the parties might know what, in law, was the status of the disputed property. The practical consideration, behind that portion of the decree, was that the court might obtain the highest price that the property would command, by selling it, in fact, free and clear of such encumbrances. And to secure such a sale, to make good its assurance that the property would go to the purchaser free and clear of the claims adjudicated, the court had power, in my judgment, at any stage in its proceedings, by giving proper notice to the parties bound by the decree, to lay its mandate of prohibition against their doing anything that would defeat the decree. Indeed, to say now to the purchaser, that it was not a water plant, free and clear of all the claims litigated and determined that he was buying, but a water plant encumbered by a renewed lawsuit, that might be carried on in any of the courts of the country, seems to me to be flying in the face of the very con-

servative, but the very just and healthful, course taken in Julian v. Central Trust Company, supra.

The judgment of the Circuit Court is reversed, with direction to dismiss the petition and discharge the plaintiff in error.