FRASER et al. v. COLE et al.

(Circuit Court of Appeals, Seventh Circuit. April 14, 1914.)

No. 2054.

1. EXECUTORS AND ADMINISTRATORS (§ 508*) — SETTLEMENT OF ESTATE — ACCOUNT IN PROBATE COURT.

An order of the probate court, recasting and confirming the account of an executor required to pay a specified sum to a legatee, makes the legatee a creditor of the executor.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2192–2198; Dec. Dig. § 508.*]

**2. COURTS (§ 493*)—ENFORCEMENT OF CLAIM OF LEGATEE—JURISDICTION OF FEDERAL COURT.**

A right of action by a legatee against an executor to recover the legatee's share of the estate in the executor's hands, provided an order has first been made on the executor to pay, given by Hurd's Rev. St. Ill. 1911, c. 3, § 118, may be asserted in the federal court provided proper diversity of citizenship exists.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1346–1352; Dec. Dig. § 493.*]

**3. CREDITORS' SUIT (§ 25*)—PARTIES.**

A bill by a legatee against an executor, ordered by the probate court to pay specified sums to legatees named, to recover the legacy and to realize on the claim by a sale of land fraudulently conveyed by the executor, is in the nature of a creditor's bill, and the presence of all the other legatees is not indispensable to jurisdiction to proceed at the instance of complainant, whose claim against the executor is separate and distinct from the claims of the other legatees.

[Ed. Note.—For other cases, see Creditors' Suit, Cent. Dig. §§ 100–111; Dec. Dig. § 25.*]

**4. COURTS (§ 313*)—FEDERAL COURTS—JURISDICTION.**

The jurisdiction of a United States District Court, obtained by reason of diversity of citizenship, of a suit by a legatee against an executor in the nature of a creditor's bill, is not lost by permitting other legatees to intervene, though thereby the requisite diversity of citizenship will be lacking, for they come in as proper or necessary, but not indispensable, parties.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 859; Dec. Dig. § 313.*

Citizenship as affecting the jurisdiction of the federal courts, see note to Shipp v. Williams, 10 C. C. A. 249.]

**5. COURTS (§ 313*)—FEDERAL COURTS—JURISDICTION.**

That a legatee and his counsel, before filing a bill in a United States District Court against an executor, understood that other legatees would ask leave to intervene, and by the same counsel, did not affect the jurisdiction of the court, obtained by reason of the diversity of citizenship of complainant and defendant, though on permitting the intervention the requisite diversity of citizenship would be lacking.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 859; Dec. Dig. § 313.*]

**6. EXECUTORS AND ADMINISTRATORS (§ 438*)—CREDITORS' ACTION—PARTIES.**

In a suit by a legatee against an executor, ordered by the probate court to pay specified sums to enumerated legatees, to reach real estate fraudulently conveyed by the executor, a coexecutor is not an indispensable party.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1765–1785, 1790; Dec. Dig. § 438.*]

**7. FRAUDULENT CONVEYANCES (§ 241*)—SETTING ASIDE—CONDITIONS PRECEDENT.**

Though an order of the probate court directing an executor to pay to enumerated legatees specified sums is not a judgment on which execution may issue, yet, where the executor has fled from the state, is insolvent, and has fraudulently conveyed her real estate in the state, which is the only source from which the claims may be realized, a bill in equity to enforce payment of a legacy and to reach the real estate fraudulently conveyed is maintainable without first obtaining judgment and execution at law in the state court or in the federal court within the state.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 694, 696–726; Dec. Dig. § 241.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

8. FRAUDULENT CONVEYANCES (§ 239*)—SETTING ASIDE—OTHER REMEDIES.

Where an executor, ordered by the probate court to pay specified sums to enumerated legatees, fled from the state, was insolvent, and fraudulently conveyed her real estate in the state, which was the only source from which the claims could be realized, an attachment was not an adequate remedy, but equity was available to avoid the fraudulent conveyance.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 681–683; Dec. Dig. § 239.*]

9. FRAUDULENT CONVEYANCES (§ 248*)—SETTING ASIDE—LACHES.

Time consumed in state courts by a legatee in litigating with an executor to establish his claim cannot be counted by the executor against the legatee as laches on the legatee suing in the federal court, by reason of diversity of citizenship, to enforce his claim and to reach real estate fraudulently conveyed by the executor.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 730–734; Dec. Dig. § 248.*]

10. COURTS (§ 311*)—JURISDICTION—DIVERSITY OF CITIZENSHIP—PARTIES.

Where a bill by a legatee, a citizen of California, against an executor, a resident of Massachusetts, sought to reach real estate fraudulently mortgaged by the executor to a trustee residing in Illinois to secure a note owned by a resident of Illinois, the trustee, made a party, was bound by any decree respecting his representative defense, and the trial court could, by ancillary bill, bring in the holder of the note, if that should be deemed necessary or advisable, without affecting the diversity of citizenship.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 858; Dec. Dig. § 311.*]

11. VENDOR AND PURCHASER (§ 260*)—VENDORS' LIENS—PRIORITIES.

Where a creditor, who was the attorney of an executor, knew of her dealings with the assets of the estate, his lien pending a controversy over the settlement of the estate was subordinate to an equitable lien in the nature of a vendor's lien growing out of a foreclosure sale of testator's real estate, provided such a lien accrued.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 664–669; Dec. Dig. § 260.*]

12. TRUSTS (§ 343*)—VENDOR AND PURCHASER (§ 266*)—VENDORS' LIENS—WAIVER.

Where money used by an executor in buying real estate belonged partly to legatees, the legatees, by insisting in the state court that the executor abide by the purchase, thereby waived title through a resulting trust, but they did not waive a purchase-money lien, if one in fact arose from the ratified purchase, for a vendor's lien may be availed of by beneficiaries not direct parties to the sale.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 507, 508; Dec. Dig. § 343;* Vendor and Purchaser, Cent. Dig. §§ 687, 713–750; Dec. Dig. § 266.*]

13. EXECUTORS AND ADMINISTRATORS (§ 144*)—CLAIMS OF LEGATEES—LIENS.

Where the legal title to money converted into land that executors through foreclosure sold to a purchasing executor was in the executors, an equitable lien accrued to the executors for the benefit of the legatees.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 579–584; Dec. Dig. § 144.*]

14. EXECUTORS AND ADMINISTRATORS (§ 456*)—CLAIMS OF LEGATEES—ENFORCEMENT—SOLICITOR'S FEES.

In a suit by a legatee to enforce his claim against an executor and to reach real estate fraudulently conveyed by her, the court may not in-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

clude in the claim of the legatee solicitor's fees and to that extent increase the indebtedness of the executor, though the legatee, as the original complainant, may be given such an allowance out of the recovery as against colegatees intervening.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1941–1967; Dec. Dig. § 456.*]

Appeals from the District Court of the United States for the Eastern Division of the. Northern District of Illinois; Christian C. Kohlsaat, Judge.

Suits by Arthur H. Cole, administrator with the will annexed of Donald Fraser, deceased, against Grace Fraser and others. From decrees for complainant and interveners, defendant Grace Fraser alone appeals in one case, and she and defendant E. F. Mann both appeal in the other case. Modified and affirmed.

John C. Murphy, of Aurora, Ill., for appellants.

Rufus S. Simmons and S. C. Irving, both of Chicago, Ill., for appellees.

Before BAKER and MACK, Circuit Judges, and ANDERSON, District Judge.

BAKER, Circuit Judge. Two cases are presented on the one record. Each decree sustains a bill in equity by Cole, administrator c. t. a. of the estate of Donald Fraser, to enforce a claim against Grace Fraser and to realize upon it by sale of land in Illinois, in one case fraudulently mortgaged to E. F. Mann and fraudulently conveyed to Katherine Mechler, and in the other fraudulently conveyed to Gertrude Kelly. Mechler and Kelly each filed a disclaimer, and Grace Fraser defended as owner. In one case Grace Fraser alone appeals; in the other, she and Mann are appellants.

Facts common to both appeals are these: In 1895 William Fraser, husband of Grace and brother of Donald, died childless and testate. In his will William devised and bequeathed certain real and personal property to his widow in lieu of dower, but she elected to take under the law. By the next item he made a general bequest of $4,000 to his brother Donald. Other collateral kin were given in subsequent and separate items of the will general money bequests of named sums. Grace Fraser and George McDonald were nominated executors, with a direction that they should not be required to give bond, and they qualified and acted. Among the assets were notes of Sadler to William Fraser for $25,800, secured by purchase-money mortgage of what is known in the record as the Fraser Farm. Grace Fraser, being advised that under the law she took all the estate's personalty, bid at the sale under the executors' foreclosure decree on the Sadler mortgage the full amount of the debt. Learning better afterwards, Grace Fraser asked the foreclosing court to set aside the sale and offer the property anew. This was done, and at the resale she acquired the farm for $10,000. Donald Fraser and the beneficiaries of the other separate bequests sued out a writ of error from the Appellate Court of Illinois to test the right of the foreclosing court to relieve Grace Fraser from her mistake of law. In Fraser v. Fraser, 128 Ill. App. 73, the second

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sale was set aside and the original one reinstated. Thereupon the legatees petitioned the probate court to revise the final account of Grace Fraser, as executrix, which had theretofore been approved. In the order confirming the recast account the probate court ordered "said executors, and each of them, to pay to each of said legatees the several sums named in said order." Donald Fraser's estate, after being charged with amounts received under prior reports, was found to be entitled to $3,357; and the amounts severally due to other legatees, each less than $500, were likewise found. On appeal the recast account was confirmed. Fraser v. Fraser, 149 Ill. App. 186.

Grace Fraser owned certain real estate in her own right, known herein as the Elgin Flats. Cole, as administrator of Donald Fraser's estate, a citizen of California, filed his bill in the court below against Grace Fraser, a citizen of Massachusetts, and Gertrude Kelly, fraudulent grantee, a citizen of New York, to reach this real estate. His bill set forth the above-stated facts, and additionally that the William Fraser estate was insolvent; that Grace Fraser and George McDonald had left the state of Illinois and had abandoned their trust as executors; that Grace Fraser was insolvent; that she had appropriated to herself all the William Fraser estate after payment of debts; and that there was no property in Illinois out of which to satisfy complainant's claim except the real estate fraudulently conveyed by Grace Fraser. The other legatees were permitted to intervene, file their claims, and adopt the allegations of the bill. Grace Fraser, both before and after the intervention, filed certain pleas challenging the right of the trial court to entertain the suit. On the overruling of these pleas, she declined to plead further, and the decree for complainant was thereupon entered. The nature of the pleas will be understood from our statement of the reasons why the bill was properly sustained.

[1] 1. Donald Fraser's estate, by virtue of the legacy to Donald and the recast account in the probate court, was a creditor of Grace Fraser. McDonald v. People, 222 Ill. 325, 78 N. E. 609; Waterman v. Canal-Louisiana Bank Co., 215 U. S. 33, 30 Sup. Ct. 10, 54 L. Ed. 80.

[2] 2. Chapter 3, § 118, Hurd's Ill. Stat. 1911, gives a legatee a right of action against an executor to recover the legatee's share of the estate in the executor's hands, provided an order has first been made on the executor to pay. And this right of action may of course be asserted in the federal as well as in the state court, if proper diversity of citizenship exists. Waterman's Case, supra.

[3] 3. A creditor's bill was therefore the character of the bill in question. If all the other legatees, as creditors, were indispensable parties to the bill, the requisite diversity of citizenship would be lacking. But while in any creditor's pursuit, for himself and others who may join, of his debtor's fraudulently conveyed property the presence of the other creditors may be necessary in order to enable the court to do exact justice in the distribution, their presence is not indispensable to jurisdiction to proceed at the sole instance of the complainant. Payne v. Hook, 74 U. S. (7 Wall.) 425, 19 L. Ed. 260; Hotel Co. v. Wade, 97 U. S. 13, 24 L. Ed. 917; Williams v. Crabb, 117 Fed. 193, 54 C. C. A. 213, 59 L. R. A. 425; O'Neil v. Wolcott Mining Co., 174

Fed. 527, 98 C. C. A. 309, 27 L. R. A. (N. S.) 200. Donald's claim against Gràce Fraser was as separate and distinct from the claims of other legatees as if she had been a banker and he one of her depositors.

[4] 4. Jurisdiction obtained on the bill was not lost by permitting the other legatees to intervene, for they came in as proper or necessary but not indispensable parties, and the jurisdiction over them was not original but dependent or ancillary.

[5] 5. Though complainant and his counsel before filing the bill understood that the other legatees would ask leave to intervene, and by the same counsel, the right of the court in permitting intervention, the right of complainant to insist that jurisdiction be taken on his bill, and the right of the other legatees to seek intervention, were exactly the same as if there had been no such understanding. There can be no fraudulent collusion respecting jurisdiction in presenting and maintaining legal grounds of jurisdiction. Lehigh Mining Co. v. Kelly, 160 U. S. 327, 16 Sup. Ct. 307, 40 L. Ed. 444; South Dakota v. North Carolina, 192 U. S. 286, 24 Sup. Ct. 269, 48 L. Ed. 448.

[6] 6. George McDonald, coexecutor, whose citizenship according to the averments of the plea was in New York, was not an indispensable party. His presence would not disturb the diversity of citizenship; but in the trial court, considered not as a federal court but as a court of equity, his presence was dispensable because nothing was asked against him, and because it was not only equitable but also in his interest that Grace Fraser, who had appropriated all the assets of the William Fraser estate, should be made to pay.

[7] 7. Though the order of the probate court was not a judgment on which execution could issue, the bill discloses a suit maintainable without first obtaining judgment and execution at law in Illinois, because Grace Fraser had fled from the state, was insolvent, and had fraudulently conveyed her real estate in Illinois, which was the only source from which the claim against her could be realized. Case v. Beauregard, 101 U. S. 688, 25 L. Ed. 1004; National Tube Works v. Ballou, 146 U. S. 522, 13 Sup. Ct. 165, 36 L. Ed. 1070.

[8] 8. Attachment was not an adequate remedy. Without the aid of equity in avoiding the fraudulent conveyance the legal writ would be unavailing.

[9] 9. Time consumed in the state courts by complainant in litigating with Grace Fraser to establish his claim cannot be counted by her against him as laches. Northern Pac. Ry. Co. v. Boyd, 228 U. S. 482, 33 Sup. Ct. 554, 57 L. Ed. 931.

By the other bill complainant sought to reach the Fraser farm. The whole situation was disclosed; Grace Fraser filed the same pleas; and she abided by the order overruling them. Since this bill is also sustainable as a creditor's bill, it is immaterial whether complainant has further equities as against Grace Fraser. But appellant Mann, against whom the bill as a mere creditor's bill would not be sufficient, answered, and the issues so made were referred to the master, whose report in favor of complainant was confirmed by the chancellor.

[10] In his answer Mann's first insistence was that, inasmuch as

214 F.—36

the trust deed to him was executed to secure Grace Fraser's $1,500 note owned by Fisher, the court could not proceed in the absence of Fisher. As Mann and Fisher were both citizens of Illinois, Fisher's presence would not affect the diversity of citizenship. If Fisher is not cut off by a proceeding in which his trustee defends in his behalf (Lewis v. Peck, 154 Fed. 273, 83 C. C. A. 211), at least Mann is bound by the decree respecting his representative defense, and the trial court has jurisdiction by ancillary bill to bring in Fisher if that should be deemed necessary or advisable (Julian v. Central Trust Co., 193 U. S. 93, 24 Sup. Ct. 399, 48 L. Ed. 629).

[11] On the merits Mann contended that the note and trust deed were given and taken in good faith and for full value. Absence of actual fraudulent intent was admitted; but, as Fisher was attorney for Grace Fraser and had full knowledge of her dealings with the assets of the William Fraser estate, his lien, taken pending the controversy, is subordinate to the equitable lien in the nature of a vendor's lien growing out of the foreclosure sale of the Fraser farm, if such a lien accrued.

[12, 13] Equitably the money Grace Fraser used in buying the farm belonged partly to the legatees. By insisting in the state courts that she abide by the purchase, they waived all claim to the title to the land through a resulting trust. But that does not mean that a purchase-money lien was waived if it in fact arose from the ratified purchase. A vendor's lien may be availed of by beneficiaries who were not direct parties to the sale. Zeiser v. Cohn, 207 N. Y. 407, 101 N. E. 184, 47 L. R. A. (N. S.) 186, cited in Gerstell v. Shirk, 210 Fed. 223, 127 C. C. A. 41. Here the legal title to the money (converted into land that the executors through foreclosure sold to Grace Fraser) was in the executors; and so, in our opinion, an equitable lien accrued to the executors for the benefit of the legatees. And if in a suit by the beneficiaries against the purchasing executor the executors should have been parties, the challenge would go only to the capacity of the beneficiaries to sue in their own names and right—a question not raised.

[14] An allowance of $1,000 solicitors' fees was included. No law of Illinois warranted the increase of Grace Fraser's indebtedness by such an addition. Washburne v. Burke, 84 Ill. App. 587. Nor can equity in a suit upon a creditor's bill or a vendor's lien bill enlarge the defendant's debt in that way. Cole, as the original complainant, might be given such an allowance out of the recovery as against interveners; but we assume that this is not needed because all the legatees were represented by the same counsel.

The decrees are modified by striking out the allowance of solicitors' fees, and as modified are

Affirmed.